K. M C. WILLIAMSON v. LOCK'S CREEK CANAL COMPANY.

*Action for Diverting Water -- Evidence.*

In an action for damages against a Canal Company for diverting water from plaintiff's mill by cutting a ditch which drained a swamp from which the supply of water was obtained, it is necessary for the plaintiff to show that his mill was in use before the charter of the defendant Company was granted.

*Quære.* Does the amended charter of 1871–'2 relate back to the original charter so as to give the defendant an inchoate title by occupancy?.

*Quære.* Is notice of occupancy to be presumed from the nature of the thing, *i. e.*, from the character of the swamp land and the presumption that it would be drained at some time?

CIVIL ACTION for Damages, tried at Fall Term, 1876, of MOORE Superior Court, before *Furches, J.*

This action was instituted in Cumberland and on affidavit of plaintiff removed to Moore.

The plaintiff had a mill on Lock's Creek and brought this action to recover damages for the diversion of the natural flow of water (which in part supplied said mill) caused by cutting a canal by means of which the waters of Lock's Creek and Evans' Creek were carried into the Cape Fear River above the plaintiff's mill.

The facts bearing upon the point decided in this Court are sufficiently stated by the CHIEF JUSTICE in delivering the opinion.

His Honor in the Court below submitted certain issues to the jury who found in favor of the plaintiff. Judgment. Appeal by the defendant.

*Mr. N. W. Ray*, for plaintiff.
*Messrs. McRae & Broadfoot*, for defendant.

PEARSON, C. J. In looking over the papers a point presented itself which is fatal to the plaintiff's recovery. It is this;

The complaint shows that the canal was cut in 1873, but it nowhere appears at what time the mill was built.

The issue; was the plaintiff the owner of the land and in the possession of it at the time the action was commenced? does not enable the Court to see that the mill was built and the water appropriated to its use before the charter of the defendant in 1871–'72.

The merits of the action rest upon this fact; for manifestly, if the defendant had acquired the right to drain the swamp before the plaintiff had acquired title to the use of the water "by occupancy," (a mode of acquiring title to "light, air and running water" and to animals *feræ naturæ*,) by erecting his mill and appropriating the water of the swamp to run it, he has no cause of action.

The error is that the case does not fix the time when the mill was built.

We are therefore of the opinion that the plaintiff has no cause of action if the mill was built after the charter of the company was granted; for the company then with the sanction of the General Assembly gave notice of an intention to appropriate so much of the water of the swamp as could be drained off. and any person who built a mill upon the out-

let of the swamp after this charter, with the expectation of acquiring by occupancy a title to all of the waters of the swamp, acted of his own folly.

As much as he could reasonably have counted on was a right to use for the purposes of his mill so much of the water of the swamp as was not drained off and would continue to flow down the outlet.

It may be that the notice of occupancy by the defendant will relate back to the original charter, of which, the charter set out in the pleadings is an amendment.

One who starts a deer and is in pursuit has acquired an inchoate title by occupancy and no third person has a right to kill the animal before his hounds; for there is notice of an intention to appropriate the thing which is *feræ naturæ*.

This furnishes an analogy because water like wild animals is the subject of title by occupancy; and the original charter like "the cry of the dogs" gives notice.

Upon our consultation it was suggested by Justice Rodman who comes from a land that abounds in swamps and lakes, that notice should be presumed from the nature of the thing; for when 20,000 acres of land that by draining can be made fit for the purposes of agriculture are covered by water some one or two feet deep, every one must know that at some time or other the swamp will be drained, and the plaintiff will be presumed to have built his mill with an intention to use the water of the swamp until it was drained; and after that to use such of the water only as was left to flow through the outlet to his mill.

There is force in this suggestion and we shall be pleased to have it discussed, should the case come before us a second time.

This suggestion recalls to my memory a case tried before me while acting as one of the Judges of the "Superior Courts of Law and Equity" in the County of Perquimans.

The plaintiff owned a mill on the outlet of a swamp, some miles below its entrance. The defendant cleaned out and deepened the outlet above the plaintiff's mill and partially drained the swamp by means of ditches. The gravamen of the action was that the defendant had by his operations injured the mill which was of long standing, in this; that instead of letting the water of the swamp flow to the mill in its natural way by which there was a regular supply of water, the acts of the defendant caused the water in time of a rain to run off in excess and leave no regular supply to be retained by the swamp as it used to be; *Held*, that the plaintiff had no cause of action; *damnum absque injuria.*

This decision was submitted to by the plaintiff's attorneys, the late Judge Moore and Mr. Charles Kinney, both of whom were men as learned and able as any who have ever belonged to the Bar of this State.

I am inclined to the opinion that the mill was built with notice that the swamp would be drained.

In the mountain country one may use the vacant land as a range until it is granted by the State.

In this connection the evidence in regard to the "McAlister ditch" and the other ditches cut many years ago disturbing the water of the swamp would seem to be relevant. At all events the title of the plaintiff to the water of the swamp by occupancy was subject to the right of eminent domain. Whether the charter of the defendant covers a case of this kind where the injury is collateral and remote, or is confined to cases of benefit or damage caused directly by the cutting of the canal, we will not now discuss, because it can be met by an amendment of the charter.

Error.

PER CURIAM.                              *Venire de novo.*