K. M. C. WILLIAMSON v. LOCK'S CREEK CANAL COMPANY.

*Riparian Proprietor—Action for Damages for Diverting Water— Lock's Creek Canal Co.—Practice—Assignment of Error in this Court—Liability of Individual Corporators—Parties.*

1. A proprietor of land, through which a water-course flows, has a right to a reasonable use of water, provided he does not by his use of it materially damage any other proprietor of land above or below.

2. In an action for damages for diverting water from a stream flowing through plaintiff's land and used by plaintiff, brought against the owners of land above, the plaintiff is not required to show his right to use the water by grant or prescription.

3. The right of the plaintiff in such case to recover damages, is not affected by the fact that the defendants gave him notice of their intention, under the provisions of an Act of the General Assembly to drain the swamp above him.

4. No error can be assigned in this Court on appeal, which was not assigned in the Court below, except (1) the want of jurisdiction in the Court wherein the trial was had, and (2) that the complaint does not contain a sufficient cause of action.

5. The Act of 1871-'2, ch. 129, (re-enacting ch. 78, Acts 1866-'7, incorporating the Lock's Creek Canal Co.,) authorizes the draining of the swamp, provides how the advantage accruing to owners of land in the swamp may be assessed, &c., &c., but provides no compensation to any one damaged by the draining ; *Held,* in an action by the owner of land below the swamp damaged by the diverting of the flow of water in a stream running from the swamp through his land, that the plaintiff is entitled to recover damages against the individual members of the corporation acting under the powers conferred in the Act, as well as against the corporation itself.

6. In such case no statutory remedy has been provided for the plaintiff, and his remedy by an action for damages exists as at common law.

(*Stout* v. *Woody,* 63 N. C. 37, cited and approved.)

CIVIL ACTION, for Damages, commenced in Cumberland, and removed to and tried at Fall Term, 1877, of MOORE Superior Court, before *Seymour, J.*

The facts are sufficiently stated by Mr. Justice RODMAN in delivering the opinion of this Court.

The counsel for defendant requested the Court to charge:

1. That the plaintiff was not entitled to recover because he is presumed to have used the water with notice that at sometime the swamp would be drained; certainly he is not entitled to recover for a diversion of water which became necessary by reason of the addition of machinery erected after defendant's charter. Declined.

2. That the plaintiff is not entitled to recover because he has failed to show 20 years uninterrupted occupation or user of the water, in himself or those under whom he claims. Declined.

3. That if the water diverted was surface water, the plaintiff is not entitled to recover. Given.

4. That plaintiff cannot recover against the individual defendants. Declined.

It is not deemed necessary to set out the instructions of His Honor, as they are not reviewed here, except as to one point which sufficiently appears in the opinion.

. Under the instructions given, the jury returned a verdict for the plaintiff. Judgment. Appeal by defendant.

*Messrs. J. W. Hinsdale* and *N. W. Ray*, for plaintiff.
*Messrs. McRae & Broadfoot*, for defendant.

RODMAN, J. This action was brought by the plaintiff, the owner of a mill on the outlet from a certain swamp, called Flat Swamp, to recover damages against the canal company, McKeithan, President of the Company, J. M. Williams one of the Directors, and Devane the contractor who executed the works complained of, for diverting a water course formed by the union in or on an edge of the swamp of Lock's Creek and Evan's Creek, the united waters of which run, as it is claimed, through the swamp, between defined banks, and with waters from other sources running through the swamp, from the stream on which the plaintiff's

mill is situated.  The diverson it is alleged was effected by cutting a canal from, at, or near the point where Lock's Creek and Evan's Creek enter the swamp, to a point on the Cape Fear River above the plaintiff's mill, and thus diverting a considerable part of the water which was accustomed to flow and naturally did flow by the plaintiff's mill from ts natural and accustomed course, to the damage of the plaintiff.

The plaintiff in his complaint alleges that his mill is an ancient one, &c.   But this taken in connection with the rest of the complaint we take to be surplusage.   The plaintiff was probably induced to insert this in his complaint, by amendment, by reason of some observation in the opinion of the Court when this case was before us heretofore.   76 N. C. 478.   But those remarks were evidently based on the idea, which was not inconsistent with the facts as they then appeared, that the plaintiff by his mill obstructed the outflow of water from the swamp, and ponded water on the lands of the defendants, a right which could be acquired only by grant or prescription.   But as the case now appears although the plaintiff says that his is an ancient mill, he does not claim any right to pond water on the land of the defendants, or to obstruct its flow from their land, or any other right by prescription.   Neither he nor the defendants allege that he does so pond it, or obstruct its natural flow. The plaintiff claims only on the ground that as a riparian proprietor he has a right to use the water of a natural water course as it flows through his lands and had appropriated it to a lawful use before the act complained of.

The defence to this claim in substance is;—

1.  That there is no water course in the legal sense of the term, that is, with well defined banks, flowing through the lands of the defendants or of those whom they represent, to the lands or mill of the plaintiff.

2.  That in the interest of agriculture, they, as owners or

as representing owners of land in Flat Swamp, have a right at common law or by virtue of certain Acts of Assembly, to drain off from their lands the *surface water*; and that this term "surface water" includes not only the water which falls on their land in rain, but also all water which overflows the banks of the water course (if any) flowing through their land to the mill of the plaintiff, and all which soaks or percolates through the banks of said water course called in the South, and perhaps elsewhere, seepage water, and that this right extends not merely to freeing the very top or surface of their land from such water, but to freeing it to a depth sufficient for the purposes of agriculture, or greater if need be, for wells, &c., and this, although it may incidentally draw from the water course a material quantity of water which would otherwise flow down it to the plaintiff's mill, and any damage so resulting being rightful is in law language "*damnum absque injuria.*"

Such as we conceive is the contention of fact and right between these parties.

1. Speaking generally, we take it to be clear that every proprietor of land through which a water course flows, has a right to a reasonable use of the water, whether for power to turn a mill, or for watering his stock, or irrigating his lands, &c; *provided*, he does not by his use of it, materially damage any other proprietor above or below. Of course the rights of such a proprietor would be liable to be limited by the just rights of any proprietor above or below. Taking this to be so, the complaint discloses a sufficient cause of action without reference to the question of the mill being an ancient one, liable however to be defeated by any sufficient defence. The jury under the instructions of the Judge found the material allegations of the complaint, and we are now called on to examine into the propriety of these instructions, as far as we may, according to established rules.

2. It is admitted that the propriety of the Judge's refusal to give the instructions specifically asked for by the defendant, is open to review here.

We are of opinion that those instructions were properly refused. Without discussing them *seriatim* it will be sufficient to say, that they are all founded on the idea, that the plaintiff was bound to prove a right to use the water as he did, either by grant or prescription, or on the idea, that the giving of notice by defendants, either by the charter of the canal company or otherwise, in some way impaired the right of the plaintiff over the water course.

It has been seen that the right claimed by the plaintiff in his complaint, is not claimed by virtue of any grant, but under his rights as a proprietor of both banks of the stream on which his mill is situated; and I cannot conceive of any principle on which a notice from defendants that they intended to drain the swamp, could operate to diminish any right which the plaintiff previously had to the use of the water course which might be affected by the drainage.

Probably the defendants were misled, as the plaintiff was, by the interpretation which they put on the language of the Court when the case was last here; but it does not appear that this misconception prevented them from availing themselves as far as they could of any substantial grounds of defence.

3. The counsel for the defendants have urged in this Court, that the instructions of the Judge were positively erroneous in several respects; but it does not appear that they excepted to any part of those instructions in the Court below.

We believe it is the general, if not universal, practice of Courts of appeal, to permit no errors to be assigned before them, which were not assigned in the Court below, except perhaps, that the Court in which the trial was had, had no-

jurisdiction of the action, and that the complaint contains no sufficient cause of action.

Our appeal is a substitute for the old writ of error, and our case stated, for a bill of exceptions. The very name of this last, implies that the exception to the ruling or other act of the Judge, must have been taken in the Court below; and the older authorities hold, that it must have been taken *during the trial* and *then* noted and put in form and presented to the Judge for his seal, at least during the term. *Wright* v. *Sharp*, 1 Salk. 288. And this appears still to be the rule, where it has not been altered by statute. *Winston* v. *Giles*, 27 Gratt. (Va.) 530. That it has not been altered by statute in this State, but has been substantially affirmed, appears from C. C. P. (Bat. Rev. ch. 17) § § 238–'9, and from the case of *Stout* v. *Woody*, 63 N. C. 37, which expressly decides the question. The reason assigned for this practice is, that it is proper to inform both the Judge and the appellee, of the exception, while the error if any may perhaps be corrected. This reason applies with equal force in our present practice. It would be inconvenient if a party could apparently acquiesce in instructions to a jury and take his chance of a verdict upon them, and for the first time in the appellate Court, assign errors in them. It may be that the instructions of the Judge in this case were erroneous in the respects suggested by the counsel, or in others; and that the matters of defence were not properly presented to the jury; but under the settled practice of this Court, we think that we are not at liberty to inquire whether they were or not. The defendants urge that by this rule, any review by this Court of the principal question of law in the case, is precluded. That may be true. But the rule is not only just and reasonable in itself, but is essential to the administration of justice; it has been long acted on and ought to be well known, and this Court is not at liberty to depart from it in any case. *Stout* v. *Woody*, 63 N. C. 37.

11

4. There is one ruling of the Judge however, which was excepted to below and which we are at liberty and required to review. The defendants asked the Judge to instruct the jury that the plaintiff could not recover against the individual defendants, McKeithan, J. M. Williams and Devane. This the Judge refused and in effect said that these persons were liable, if the company was.

The argument for these defendants is, that they were the agents of a corporation created for public purposes, and that they acted within the limits of the powers lawfully given to the company by the Acts respecting it, and were guilty of neither malice nor negligence.

For this proposition they cite Cooley Const. Lim. 564 Accepting for the occasion the language of Cooley as a correct expression of the law, and admitting that the corporation was created for public purposes, are the defendants within the rule? The Act of 1866-'7, ch. 78, incorporates these defendants and others; authorizes them to drain Flat Swamp; by § 8, it provides how the advantage to the owners of land in the swamp may be assessed, and requires such owners to pay the amount of the increased value of their lands by reason of the drainage, to the corporation; but it provides for no compensation to any one damaged by the drainage. The whole effect of that Act was to authorize the company to represent the land owners in the swamp, in the present action, and in others like it. § 8 of this Act may be left out of view as unconstitutional, inasmuch as it requires each owner of land to pay for the increase in value of his land, without regard to the cost of the improvement.

No part of this Act directly affected the plaintiff. By the Act of 1871-'2, ch. 129, the previous Act is substantially re-enacted, and § 5 of this last Act gives to the company authority to proceed under sections from 1 to 11 of ch. 39 of Battle's Revisal, *to secure indemnity for the expense of drain-*

*ing the lands of non-stockholders.* Otherwise, this Act is not material. We may say, in passing, that it is strange that an Act so liable to criticism as this is, and which has already produced so much uncertainty and litigation, and done so much to obstruct the object it was intended to forward, should be continued on the statute book. It provides a certain procedure by which ultimately a right may be acquired to drain the lands in any swamp on paying to the owner any resulting damage. How far this Act is constitutional it is unnecessary to inquire; because, if it be void, it gives the defendants no justification beyond what they would otherwise have; and if it be valid, it does not appear that its provisions were pursued in respect to the plaintiff. We are of opinion therefore that the ruling of the Judge which we are considering, was not erroneous. The doctrine assumed above as correct, does not cover these defendants who can only protect themselves as the company, which is an incorporated society of land owners in the swamp, can, under its rights at common law, which has been seen are not so presented to us that we can consider them.

5. The defendants took another exception which is open to them in this Court, to-wit, that the plaintiff was confined to his statutory remedy and could not pursue his common law remedy by an action in the Superior Court. That has been decided to be so with respect to persons whose lands are flooded by the dam of a public grist mill, or are taken for the purposes of a rail-road company; and perhaps if any statutory remedy *which he could initiate,* had been given to the plaintiff, it might be held from analogy that he was confined to it. But it will be seen that ch. 39, of Bat. Rev. gives him no remedy. By that Act all the proceedings are to be begun by the company, and it is only when we come to § 10, that we find it provided, that when damages are assessed to any tract of land, the corporation shall not enter upon it, until it has paid to the owner the damages as

sessed, with some exceptions important in themselves, but not material in this case.

In the present case no damages have been assessed to the plaintiff, or could have been by any action of his; he has never been made a party to any proceeding for that purpose, and the corporation has not entered on his land and will never have occasion to do so. It is clear that no statutory remedy has been provided for this plaintiff and his remedy at common law must therefore continue to exist.

PER CURIAM.                          Judgment affirmed.