MOCKSVILLE LODGE, No. 134, A. F. AND A. M., v. G. R. GIBBS ET. AL.

(Filed 24 April, 1912.)

**1. Contempt of Court—Facts Found—Evidence—Appeal and Error.**

The facts found by the trial judge in making a ruling for contempt of court for the disobedience of its restraining order, when supported by evidence, will not be reviewed on appeal.

**2. Contempt of Court—Service of Process—Knowledge.**

It is not necessary to show legal service of a restraining order to attach a party for contempt for its violation, for it is sufficient to prove circumstances from which it can be reasonably inferred that the respondents had knowledge of the fact that the order had been issued.

**3. Same—Evidence Sufficient.**

The expressed intent of respondent, in proceedings for contempt of an order of court, to run a merry-go-round, in spite of a restraining order, with evidence that the order had been issued on the day previous to its running in violation thereof; and on that day the respondent had an interview with his attorney, who was present in the clerk's office when the order was filed, and immediately thereafter a bill of sale to a third party was made, alleged to be fictitious, who ran the merry-go-round at the time complained of; that the order was read to respondent's wife, a copy of which she refused to receive, and which evidently thereafter, and before the commission of the offense by the vendee, the respondent had seen, a copy also having been left with his

LODGE *v.* GIBBS.

vendee; that the parties were traveling together in an amusement troupe, etc., is sufficient to sustain the findings of the trial court upon which the conviction for contempt was entered.

4. Contempt of Court—Disavowed Intent—Evidence—Conviction.
    The mere sworn disavowal of any intention on the part of one attached for contempt of an order of court is not sufficient for him to demand his discharge, when from his acts or conduct it may be seen that he was guilty thereof. *Weston v. Lumber Co.,* 158 N. C., 270, cited and applied.

APPEAL from order of *Daniels, J.,* rendered at chambers, 29 August, 1911; from DAVIE.

The summons in this action was issued on 7 August, 1911, and on the same day an order was signed by the judge holding the courts of the Tenth District, restraining the defendant, G. R. Gibbs, his agents and employees, from operating a merry-go-round or other device upon the grounds described in the affidavit, on the 10th and 12th days of August, 1911, and from doing or permitting to be done by himself, his agents or employees, anything tending to the annoyance or disturbance of the picnics to be held on those grounds on those days.

The restraining order was filed in the clerk's office at Mocksville on 9 August, 1911, and was issued on that day.

The merry-go-round referred to in said order was operated on the 10th day of August, but the respondents, Gibbs and Emington, claim that on 9 August, 1911, before notice of the restraining order, the said Gibbs sold said merry-go-round to said Emington, in good faith and for value, and that it was operated on the 10th by Emington as his own property, while the plaintiff claims that both Gibbs and Emington knew that the restraining order had been issued before said sale; that the sale was fictitious, and that Emington was acting as the agent of Gibbs on 10 August, 1911.

On 17 August, 1911, a notice was issued to the respondents to appear and show cause why they should not be attached for contempt, and upon the hearing of the same the following order was made:

This cause coming on to be heard before his Honor, F. A. Daniels, judge, at chambers in Salisbury, N. C., on 29 August,

LODGE *v.* GIBBS.

1911, upon a rule issued by his Honor against A. T..Grant, Jr., G. R. Gibbs, and Thomas Emington, to show cause why they should not be attached as for contempt in disobeying the restraining order issued by this court in the above action at chambers in Statesville, N. C., on 7 August, 1911, and the writ of injunction issued thereunder on 10 August, 1911, by the clerk of the Superior Court of Davie County, N. C., and the rule now being heard upon affidavits and other proofs offered in evidence, and it appearing that an order was made by his Honor at chambers in Statesville, N. C., on 7 August, 1911, restraining the defendant, G. R. Gibbs, his agents and employees, from operating a merry-go-round or other device on the grounds described in the affidavits filed on 10 and 12 August, 1911, and from doing or permitting to be done by himself, his agents or employees, anything tending to the annoyance or disturbance of the picnics to be held on those grounds on those days; and it further appearing that the respondents had full knowledge of the filing of said order, the same having been served on them; and a rule to show cause why they should not be attached for contempt for disobeying said order having been issued by his Honor at chambers in Lexington, N. C., on 15 August, 1911, and returnable before his Honor, F. A. Daniels, in chambers in Salisbury, N. C., on 20 August, 1911, when and where said respondents appeared and made answer:

The court finds the following facts: That respondent A. T. Grant, Jr., is not guilty of any contempt of this court or of any willful disobedience of any order or process issued by the court in this cause; and it is further ordered and adjudged that said rule be discharged as to the said A. T. Grant, Jr., and that he recover his costs.

The court finds the further facts, to wit: That the respondents G. R. Gibbs and Thomas Emington had notice of said restraining order so issued by the court as aforesaid, copies of the same having been duly served on them, and that respondents G. R. Gibbs, and Thomas Emington whom the court finds was the agent of the said Gibbs, after said notice, did operate said merry-go-round on the lands described in the

LODGE *v.* GIBBS.

petition on the said 10 August, 1911, in willful disobedience of said restraining order of the court, and that after said Gibbs and Emington had notice of the granting of the restraining order in this cause, but before it had been served on either of said respondents, the said Gibbs made a pretended sale of his merry-go-round to said Emington with intent to violate and evade said restraining order.

It is further considered, ordered, and adjudged by the court that respondents G. R. Gibbs and Thomas Emington are guilty and in contempt of this court, and that respondents G. R. Gibbs and Thomas Emington each pay a fine of $50, and that they pay all the costs of this proceeding, to be taxed by the Clerk of the Superior Court of Davie County.

The said G. R. Gibbs and Thomas Emington are committed to the custody of the Sheriff of Rowan County until this judgment is complied with.                          F. A. DANIELS,

*Judge Presiding, Tenth Judicial District.*

The respondents excepted and appealed, and assigned the following as errors:

1. That his Honor held that respondents should pay all costs, including that incurred by A. T. Grant, Jr.

2. That there was no sufficient evidence to support the findings of fact as made by his Honor.

3. That his Honor held that respondents had not purged themselves of the contempt alleged to have been committed.

4. That his Honor held that respondents were guilty of contempt, and adjudged that they should pay a fine of $50 each.

*T. B. Bailey and E. L. Gaither for plaintiff.*
*Graham & Devin and D. G. Brummett for defendant.*

ALLEN, J.  The facts found by his Honor and incorporated in his order are ample to support the conclusion he reached, and they are not reviewable, if supported by evidence. *Young v. Rollins,* 90 N. C., 125; *In re Denton,* 105 N. C., 59; *Green v. Green,* 130 N. C., 578.

The respondents do not contest the correctness of this rule, but, admitting it, they say there is no evidence to support the

findings that they had notice of the restraining order before 10 August, 1911, on which day it is alleged it was violated, or that the respondent Emington was the agent of the respondent Gibbs, or that the sale to Emington was not made in good faith and for value.

We must, then, consider the evidence, not for the purpose of reviewing the findings of his Honor, but to see if there is any evidence to support them, and in doing so will be guided by the principle that it is not necessary to show legal service of the restraining order before 10 August, 1911, and that it is suffi-cient to prove circumstances from which it can be reasonably inferred that the respondents had knowledge of the fact that the order had been issued, in accordance with the rule stated in High on Injunctions, sec. 1421: "In considering the ques-tion of a defendant's liability for a breach of injunction, it is to be borne in mind that the injunction becomes operative from the time of the order being made, and not from the date of the writ itself, or from the time of its being drawn up. The mandate of the court being effectual upon all parties having notice thereof from the time it is given, to fix defendant's lia-bility for a violation it is only necessary to show that he was actually apprised of the existence of the order at the time of committing the acts constituting the violation"; and again in section 1422: "Any means of information whereby notice of the order is actually brought to the knowledge of the parties en-joined would seem sufficient to meet the requirements of the rule above laid down. And the courts have uniformly held that it is not requisite that a defendant, against whom an in-junction has been issued, should be officially apprised of its existence, or be served with process in the cause to render him liable in contempt in committing a breach of the injunction. If defendant is informed of the existence of the order, although not yet served with process, it becomes operative upon him, and he will not be allowed to disregard or violate it. It is enough to show that he has had actual notice of the existence of the writ, or of the order of the court that it should issue."

What, then, are the circumstances established by the evi-dence, if the plaintiff's affidavits are believed?

LODGE *v.* GIBBS.

(1) The summons was issued on 7 August, 1911, and was served on the respondent Gibbs on 8 August, 1911, and on the night of that day he (Gibbs) said, in the presence of J. H. Bruce, "that the plaintiffs thought they had fixed to stop him from running his merry-go-round, and that he intended to run his machine anyway," and that "he had a lawyer to do his fighting."

(2) The restraining order was signed on 7 August, 1911, and was filed in the office of the clerk of the Superior Court in Mocksville, about 9 o'clock of the morning of 9 August, 1911, in the presence of A. T. Grant, attorney for the respondents.

(3) The said attorney went from the clerk's office to his law office, and in a few minutes the respondent Gibbs was in the law office in conference with his attorney; and the bill of sale from Gibbs to Emington was signed about 10 o'clock of the morning of the same day.

(4) The restraining order was executed by reading and delivering a copy thereof to A. T. Grant, Jr., Esq., as attorney for G. R. Gibbs and wife, 9 August, 1911; by reading to Mrs. G. R. Gibbs and offering to leave a copy with her, which she refused to receive, not being able to find her husband, he being gone, 9 August, 1911; by reading to T. Emington and leaving a copy of same with him, 9 August, 1911; by defendant Gibbs accepting service of order without reading, as he had read the copy served on his wife, Mrs. G. R. Gibbs, and by leaving a copy with him.  This 10 August, 1911, 9 P. M.

(5) The merry-go-round was shipped to Mocksville in the name of the "Gibbs Amusement Company," and was shipped from Mocksville to Graham, on 12 August, 1911, in the same name; and when it was shipped to Graham ten tickets were bought for the Amusement Company, on one of which the respondent Gibbs traveled.

(6) The respondent Emington went to Mocksville as a member of the Amusement Company, and left as such.

(7) The respondent Gibbs continued to exercise control over the merry-go-round after he claims he made the sale to Emington, and on 11 August, 1911, boasted in the presence of Eming-

ton, and without contradiction on his part, that some kind of legal papers had been executed against him for the purpose of prohibiting the operation of the merry-go-round on the previous day at Mocksville, but that he had very cleverly transferred the ownership of this property and had shown the Masons of Mocksville that they could not bluff him, and that when another year came round he would have a new outfit and would put it over them again.

There was much evidence on the part of the respondents which, if accepted by the court, would have exonerated them from all blame; but the circumstances we have enumerated are supported by evidence, and from them it was not unreasonable to infer and find that the respondents knew of the restraining order on 9 August, 1911, and that the pretended sale to Emington was not in good faith, and was for the purpose of evading and defeating the restraining order, and the court having so found, we cannot disturb the judgment.

Again, the respondents contend that having disavowed any intention to disregard the order of the court, having "purged themselves of the contempt," they must go free.

If this position can be maintained the force and effect of a restraining order will be measured by the conscience of the party against whom it issues, and if that is sufficiently elastic, he can always violate the order, and then escape liability by swearing he did not intend to show disrespect for the order of the court.

Such a conclusion would practically destroy the efficiency of this important branch of equity jurisdiction, and is not, we think, supported by reason or authority.

The question was considered in *Baker v. Cordon,* 86 N. C., 121, and, in answer to the contention that the disavowal of the intent purges the contempt and exonerates the party, the Court there says: "This objection rests upon a misapplication of the rule laid down and acted on in the matter of *Moore and others,* 63 N. C., 397. That rule is confined to the 'class of cases,' in the language of the *Chief Justice,* who delivers the opinion, *'where the intention to injure* constitutes the gravamen' of the offense. The violation of a judicial mandate stands upon dif-

ferent ground, and the only inquiry is whether its requirements have been willfully disregarded. If the act is intentional, and violates the order, the penalty is incurred whether an indignity to the court, or contempt of its authority, was or was not the motive for doing it. A party is not at liberty, by a strained and narrow construction of the words and a disregard of the obvious and essential requirements of the order, to evade the responsibility which attaches to his conduct. In an honest desire to know the meaning and to conform to its directions, a mistaken interpretation of doubtful language would be a defense to the charge, but when its language is plain and the attempt is made to escape the force and defeat the manifest purposes of the order, by indirection, the penalty must be enforced, or the court would be unable to perform many of its most important functions."

This case has been approved, in *Weston v. Lumber Co.,* 158 N. C., 270, in which *Justice Walker,* speaking for the Court, says: "We have high authority for saying that a party enjoined must not do the prohibited thing, nor permit it to be done by his connivance, nor effect it by trick or evasion. He must do nothing, directly or indirectly, that will render the order ineffectual, either wholly or partially so. The order of the court must be obeyed implicitly, according to its spirit and in good faith. Rapalje on Contempt, sec. 40. The motive for violating the order is not considered in passing upon the question of contempt, and the respondent cannot purge himself by a disavowal of any wrong intent. It is the fact of his obedience that alone will be considered. Section 42; *Baker v. Cordon,* 86 N. C., 116, 41 Am. Rep., 448."

Upon a review of the whole record, we are of opinion there is no error.

Affirmed.