## STATE v. JACK RUMPLE ET AL.

(Filed 5 November, 1919.)

1. **Criminal Law—Lynching—Statutes—Constitutional Law.**

   Our statutes, Rev., 3698, to prevent lynchings, making it a felony to conspire to break or enter any jail, etc., for the purpose of killing or injuring any prisoner confined therein, charged with crime or under sentence; and Rev., 3233, also entitled "Lynching," giving an adjoining county jurisdiction over the crime and offender as "full and complete . . . and to the same extent" as if the crime had been committed therein, are a valid exercise of the legislative powers.

2. **Criminal Law— Lynching— Statutes— Indictments— Bad Counts Disregarded.**

   An indictment under Rev., 3698, designated to prevent lynching, and brought in an adjoining county under Rev., 3233, charged: (1) a conspiracy to break a prison; (2) breaking and entering the prison with intent, etc.; (3) a riot and disorderly conduct; and (4) defacing and entering a certain building. The first and second counts were good, and, *Held,* if the third and fourth were bad, in not stating an offense under the statute, they may be disregarded, and conviction had on the first and second ones.

3. **Criminal Law— Lynching— Statutes— Attempt— Courts— Jurisdiction— Adjoining County—Less Offense.**

   Under the provisions of Rev., 3269, a defendant, charged in the indictment of a greater criminal offense, may be convicted of the same crime of a less degree, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime; and the trial of an attempt to lynch a prisoner, under Rev., 3698, is not prohibited in the adjoining county under sec. 3233, on the ground that the latter section provides only for the completed offense, sec. 3698 conferring the jurisdiction as full and complete and to the same extent as if the crime had therein been committed.

STATE *v.* RUMPLE.

4. **Criminal Law—Lynching—Mob—Common Purpose—Evidence—Declarations of Others.**

Where there is evidence that the defendant charged with an attempt at lynching an incarcerated prisoner, Rev., 3298, was of a crowd that had conspired together for the purpose, and actively participated in the common design, the acts and declarations of other members of the crowd relative thereto, are evidence against him; and when such acts and declarations occurred after the dispersal of the crowd by the militia, it does not affect the matter, if they occurred while the mob was actually engaged in preparing to resume their unlawful purpose.

APPEAL by defendants from *Long, J.,* at the February Special Term, 1919, of SURRY.

The defendants were convicted under the statute enacted to prevent lynching, and have appealed from the judgment pronounced upon the verdict.

The indictment was found, and the defendants tried in the county of Surry, and the crime was committed in Forsyth County.

The indictment originally contained four counts: (1) A conspiracy to break a prison; (2) breaking and entering the prison with intent, etc.; (3) a riot and disorderly conduct; (4) defacing and injuring a certain building.

A *nol. pros.* was entered as to the third and fourth counts before the case was submitted to the jury.

The defendants, Chris Chappell, Ira Whitaker, and A. R. Castevens, were convicted on the first and second counts in the indictment, and the defendants, Frank Hester, Wynn Carter, J. E. Savage, and George Douthit, were convicted of an attempt to commit the crime charged in the second count.

The evidence tended to prove that on 17 November, 1918, Russell High was arrested about twelve or one o'clock in the day on the charge of a criminal assault upon Mrs. Childress, and was imprisoned in the city guardhouse; that about three o'clock the prison was attacked by a mob, who broke it open and did serious damage to the building, the purpose of the mob being to lynch High; that the riot continued during the afternoon, far into the night; that the home guard was called out, and succeeded in dispersing the crowd for a while, but that it then became necessary to send troops from Raleigh and Charlotte; that stores were broken open after the home guard reached the prison for the purpose of getting firearms to be used in capturing the prisoner High.

Evidence was admitted over the objection of the defendants as to the declarations and acts of those in the crowd.

The other exceptions relied on by the defendants are stated in the opinion of the court.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Benbow, Hall & Benbow and W. H. Beckerdite for George Douthit and Wynn Carter.*

*J. Gilmer Korner, Jr., Fred S. Hutchings, and Lewis M. Swink for Frank Hester.*

*Hastings & Whicker and J. B. Craver for J. E. Savage, A. R. Castevens, Ira Whitaker, and Chris Chappel.*

ALLEN, J.   The defendants are indicted under a statute enacted in 1893, designed to prevent lynching, the material parts of which, as applicable to this appeal, are embodied in sections 3698 and 3233 of the Revisal, and are as follows:

"3698.   *Lynching.*   If any person shall conspire to break or enter any jail or other place of confinement of prisoners charged with crime, or under sentence, for the purpose of killing or otherwise injuring any prisoner confined therein; or if any person shall engage in breaking or entering any such jail or other place of confinement of such prisoners with intent to kill or injure any prisoners, he shall be guilty of a felony, and upon conviction, or upon a plea of guilty, shall be fined not less than five hundred dollars, and imprisoned in the State's prison or the county jail not less than two nor more than fifteen years."

"3233.   *Lynching.*   The Superior Court of any county which adjoins the county in which the crime of lynching shall be committed shall have full and complete jurisdiction over the crime, and the offender to the same extent as if the crime had been committed in the bounds of such adjoining county."

The statute has been sustained as a valid exercise of legislative power, and an indictment has been approved which was found by the grand jury of Union County for the offense committed in the county of Anson, and containing three counts, the first two of which were practically identical with the first and second counts of the present indictment.   *S. v. Lewis,* 142 N. C., 626.

The defendants, admitting this much, say, however, the indictment is bad because, (1) it charges the defendants, in the third count, "with an attempt to commit the alleged crime of lynching in the county of Forsyth," and "that the grand jury of Surry County has no jurisdiction or authority in law to present a bill of indictment for the matters and things therein alleged"; (2) it charges the defendants, "in the third and fourth counts with the alleged crime of riot, disorderly conduct, and with defacing, damaging, and injuring a certain building in the city of Winston-Salem, county of Forsyth, known as the Municipal Building, all of which crimes are alleged to have been committed within the county of

Forsyth, State of North Carolina, and these defendants are advised and believe that the grand jury of Surry County has no authority or jurisdiction in law to present to this court a bill of indictment against these defendants for the matters and things therein alleged, and this court is without jurisdiction to put these defendants on trial therefor, but that the grand jury of Forsyth County has the proper authority and jurisdiction to present such indictment for said crimes therein alleged."

The first ground of objection to the indictment is not true, in fact, as neither the third nor the fourth count charges an *attempt* to commit the crime of lynching, and this is recognized in the second plea of the defendants, which describes the third count correctly as charging the crimes of "riot, disorderly conduct," and the fourth as charging the defendants "with defacing, damaging, and injuring a certain building."

But neither of the objections, if otherwise valid, can avoid the defendants, because the first and second counts are not assailed, and a defective count does not vitiate the indictment. "If one count is bad for failure to state any offense, or to state it with sufficient precision, this will not render a good count bad." Clark's Crim. Procedure, 299. To the same effect, *S. v. Holder,* 133 N. C., 710; *S. v. Avery,* 159 N. C., 495.

"In criminal cases the practice of uniting counts for cognate offenses has always been encouraged, not merely because in this way the labor of the courts, and the expenses of prosecution are greatly diminished, but because it relieves defendants of the oppressiveness which would result from the splitting of prosecutions." *S. v. Toole,* 106 N. C., 739.

Again, a *nol. pros.* was entered as to the third and fourth counts before the case was submitted to the jury, and the defendants have never been tried on those counts, and have suffered no injury by having them incorporated in the indictment.

The defendants next contend that the statute conferring jurisdiction on the courts of an adjoining county deals only with the completed offense, and not with an attempt to commit the offense, and, if the third and fourth counts were properly eliminated, there was no charge of an attempt left in the indictment, and that it was error to submit to the jury the view that the defendants might be convicted of an attempt to commit the crime charged, but here the defendants are met by the language of the statute, which says that the Superior Court of the adjoining county "shall have full and complete jurisdiction over the crime, and the offender, to the same extent as if the crime had been committed in the bounds of such adjoining county," and by section 3269 of the Revisal, which provides that, "Upon the trial of any indictment, the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime."

The charge of the crime includes an attempt, and under the latter statute it cannot be doubted that the defendants could have been convicted of an attempt under an indictment, charging the principal offense, found and tried in the county of Forsyth, and if so, the same result must follow when the indictment is found and tried in an adjoining county, which, under the statute, has as "full and complete jurisdiction over the crime" as the courts of Forsyth.

This is not a harsh rule, but is favorable to defendants, as to hold otherwise would divide the crime and subject them to the hardship and expense of defending successive indictments in different counties, a result which the General Assembly could not have contemplated.

There was also a motion for judgment of nonsuit in behalf of each defendant.

We have examined the record and find evidence that the defendants were present and participated actively in the unlawful conduct of the mob, as alleged in the indictment, and there was no error in overruling these motions. It can serve no useful purpose to point out the evidence against each defendant, and we refrain from doing so.

The evidence, much of it circumstantial, tended to prove concert of action—a conspiracy—to break the municipal prison and take a prisoner confined therein, for the purpose of lynching him, and that the defendants were active participants in the common purpose, and under these conditions the declarations and acts of members of the crowd, were competent against the defendants.

In *Saunders v. Gilbert*, 156 N. C., 463: "It appearing that many persons had gathered in the streets and followed the plaintiff to his home, where they stopped in front of his house, some or all of them using abusive and threatening language. The question arose in the trial below, whether these outcries of this mob or unlawful assembly were competent against each and every one of the crowd. With regard to this, we said: 'The testimony as to what was said in the road, and in front of the plaintiff's home, was clearly competent. The *res gestæ* includes what was said, as well as what was done. The acts and the outcries of this unlawful assembly—for that is, in plain speech and in law, what it was—is held to be competent as *pars rei gestæ,* and also as tending to show their purpose or *quo animo.* Nothing is better settled than this rule of evidence. *S. v. Rawls,* 65 N. C., 334; *S. v. Worthington,* 64 N. C., 594. We find it stated in 4 Elliott on Evidence, sec. 3128, that "What is said and done by persons during the time they are engaged in a riot (or unlawful assembly) constitutes the *res gestæ,* and it is, of course, competent, as a rule, to prove all that is said and done"—the acts and words of the mob, or any members of it, as in *Rex v. Gordon,* 21 State Trials, 485 (563), wherein evidence of the cries of the mob, "No

Popery," as it was proceeding towards Parliament House, were held competent and admissible as a part of the *res gestœ.'*  This would seem to be a full answer to these objections.  The same rule of evidence had been before stated and applied by us in *Henderson-Snyder Co. v. Polk,* 149 N. C., 104, 107.  We there held that where two prisoners are engaged together in the execution of a common design to defraud others, the declarations of each relating to the enterprise and in furtherance of it, are evidence against the other, though made in the latter's absence, if a common design has been shown, citing *Lincoln v. Chaplin,* 7 Wallace (U. S.), 132.  It is, perhaps, the universal rule that any act done, or any declaration made, by any one of the conspirators in the furtherance or perpetration of the alleged conspiracy may be given in evidence against himself or his coconspirators."  *S. v. Davis,* 177 N. C., 576.

It is true that some of these declarations and acts were after the crowd had left the prison on the arrival of the home guard, but it appears that they had not abandoned their purpose, and, on the contrary, that when a store was entered forcibly, a fact to which the defendants strenuously object, it was for the purpose of securing firearms to be used in capturing the prisoner High.

These are the objections chiefly relied on, and we find no error in them, or in the other exceptions appearing in the record.