IN RE L. E. FOUNTAIN, CONTEMPT PROCEEDINGS.

(Filed 21 September, 1921.)

**1. Appeal and Error—Contempt of Court—Findings.**

Where the appellant has been adjudged guilty of contempt in the proceedings before the judge in the Superior Court, upon proper findings supported by evidence, the findings are not reviewable in the Supreme Court on appeal.

**2. Same—Jurors—Abusive Language—Evidence—Statutes.**

Upon appeal to the Supreme Court from an adjudication of guilty in proceedings "as for contempt," C. S., 984, evidence that the appellant had approached a juror on the streets, not in the immediate presence of the court, after the jury in the case had been discharged but during the term,

and had abused the juror and the others who had rendered a verdict against him, cursing them, and using threatening jestures to the juror, and putting him in fear, is sufficient to sustain the findings of the trial judge that such conduct tended to impede and hinder the proceedings of the court, and impair the respect due thereto and the authority thereof, and the conviction based thereon.

3. **Contempt of Court—Acts and Conduct—Intent as to Effect—Purging from Contempt.**

Where the conduct of the respondent, proven or admitted, is in itself a contempt of court, he may not purge himself of the contempt, by denying his intention to show it.

4. **Contempt of Court—Threats—Assaults—Evidence.**

Where, in proceedings as for contempt of court, there is relevant and pertinent evidence that the respondent had put a juror in fear by his acts and conduct, it is sufficient on appeal to sustain a finding of assault·by the Superior Court judge.

5. **Appeal and Error—Contempt of Court—Habeas Corpus—Certiorari.**

*Held*, in this case, the respondent, found guilty of contempt of court, was entitled to appeal; but if it were otherwise, and if his sentence were excessive or the jurisdiction doubtful, his remedy was by *habeas corpus* proceedings and a *certiorari*, if necessary.

APPEAL from *Calvert, J.,* at April Term, 1921, from EDGECOMBE, in proceedings for indirect contempt under C. S., 984, *i. e.,* conduct tending to impede and impair the respect and authority of the court, but not committed in its immediate presence.

The judge finds as facts that at November Term, 1921, of said county the case of "L. E. Fountain against Calvin Jones" was called for trial on Thursday of the first week (it being a two weeks term), and the verdict was rendered on the following day that Raeford Liles was a talis juror, and after the verdict had been returned he was discharged from further service as a juror; that about an hour or two after the return of the verdict in said cause and after said talis juror had been discharged from further service, he was met on the street by the plaintiff in the action, L. E. Fountain, "who accosted him, using abusive and insulting language towards him, and the other jurors in the case because of the verdict they had rendered, and committed an assault upon the said Liles." The matter was brought to the attention of the court during that term, who thereupon issued a rule against the said Fountain, which was not served because of his absence from town until after the said court had adjourned for the term, and was continued by reason of such failure. The March Term was a criminal term and this matter was not reached, but at the April Term it was called up and a new rule to show cause was issued by the judge holding that term, requiring the respondent to appear to answer the rule, which he did in person and by

counsel, and "Upon the hearing then had the court makes these further findings of fact: About an hour or two after court adjourned for the day on which a verdict was rendered the respondent (L. E. Fountain) accosted the said Raeford Liles, using abusive and insulting language towards him, and of and concerning him and the other jurors in the case, and committed an assault upon him, the said Liles, and that this talis juror, Liles, that same afternoon informed one Daniel Harris, who was then a regular juror, and served as such the following day that the acts and conduct of the said respondent L. E. Fountain did tend to impede and impair the respect and authority for the proceedings of the court, and the court finds that the respondent has been guilty of contempt of the court, and so adjudges L. E. Fountain, respondent, to be in contempt of court, and adjudges that he pay a fine of $100 and the costs of this proceeding.          "Thomas H. Calvert,

"Judge Presiding."

The respondent excepted to the foregoing findings of fact and the judgment of the court.

*Attorney-General and Frank Nash, Assistant Attorney-General, for the State.*
*G. M. T. Fountain & Son for respondent.*

Clark, C. J. This is a proceeding for *indirect contempt*, under C. S., 984, by conduct impeding and impairing the respect due to, and the authority of, the court, by abusing and assaulting a juror. Such conduct occurred during the term of the court, but not in the immediate presence of the court.

The Court held *In re Gorham*, 129 N. C., 485, that in a proceeding as for contempt in attempting to influence a juror, the findings of fact by the trial judge, if there is any evidence, cannot be reviewed on appeal, and that the respondent can purge himself only where the intention is the gravamen of the offense. *Baker v. Cordon*, 86 N. C., 116. Here there is evidence, and the offense was in the act and not in the intention.

In this case, moreover, there was slight divergence between the evidence for the State and the respondent, and there was ample evidence to justify the findings of fact by the court. While the respondent denies attempting to strike the juror Liles, he does not deny the abusive and threatening language as to him and the other jurors on account of the verdict they rendered against him. Said juror testified that when the respondent upon the recess of the court met him and began cursing and abusing him and the rest of the jury who had sat on the case, using

profane and vile expressions, that he started to walk away from said Fountain, but the latter continued to walk beside him, cursing and abusing him and all members of the jury, and repeatedly raised his hand and shook it in his face, continuing to threaten and abuse both affiant and all other members of the jury, talking in an angry and vehement manner and threatening him so that affiant had to walk away from him, being an old man 70 years of age, to avoid a battery upon him, and walked into the lot of an adjacent stables to avoid personal encounter and fisticuff, as he thought the said Fountain was going to strike him, and he was actually put in fear, and that this was before the court had adjourned for the term, and about two hours after the affiant had been discharged as a juror. There was also an affidavit by the deputy sheriff that he was unable at that term of the court to serve the rule upon said Fountain, though his residence and place of business was in Tarboro, he absenting himself from the county for the purpose of avoiding said officer or keeping himself concealed to prevent service of said rule upon him. On an appeal in such proceedings from an inferior court, the findings of fact are reviewable, but it is otherwise when the appeal is from the Superior Court. *In re Deaton*, 105 N. C., 62.

. The respondent does not deny the use of abusive language, as stated by the juror as above, and says that he might have used gestures and raised his hand, but that he did not intend to assault him or put him in fear, and asserts he left town upon business.

*In re Hampton,* 63 N. C., 13, where the defendant in striking distance of the prosecutor, his arm being bent but not drawn back, said to the prosecutor, "I have a great mind to hit you." Whereupon the prosecutor walked away. It was held that the defendant was guilty of an assault.

But it was not necessary, indeed, that there should have been a battery upon the juror. This is not an indictment for such battery. It is sufficient if the juror was called in question in the manner above stated for the discharge of his official duty in rendering his verdict, for the court properly held that such conduct tended "to impede and hinder the proceedings of the court, and to impair the respect and authority for the proceedings of the court," and adjudged that the respondent had been guilty of contempt of the court. C. S., 984.

The defendant contends that he has purged himself of contempt by denying his intention to show contempt for the court. The question is not whether the respondent intended to show his contempt of the court, but whether he intentionally did the acts which were a contempt of the court. *In re Parker*, 177 N. C., 467.

The adjustment of differences between parties or the investigation of conduct forbidden by law by legal tribunals, instead of by personal

strength, marks the line between civilized government and barbarism. When the tribunals established for that purpose have investigated the matter at issue, or are investigating it, their action is to be respected and obeyed and is subject to review only in the method provided by law.

In *Ex parte McCown,* 139 N. C., 95, there was a personal attack upon a judge during the recess of the court and before it had actually adjourned, though the case on account of which the judge was attacked had been finally disposed of, and the court held that McCown was in contempt; that the right of the court to be protected in the discharge of its duty an inherent power of which it could not be deprived, for the Constitution, Art. IV, sec. 12, provides: "The General Assembly shall have no power to deprive the Judicial Department of any power or jurisdiction which rightfully pertains to it as a coördinate department of the government." It is a most essential power rightfully pertaining to the Judicial Department that those administering it, whether judges or jurors, shall not be assaulted or intimidated by violent and threatening conduct from the untrammeled discharge of their duties, and this is as essential in regard to jurors, who are a part of the court, as it is to the judges.

There would be small assurance of the impartial and fearless administration of justice if the judges only are to be protected from such misconduct as is here shown, but the jurors who are much more liable to be thus called in question should be left to defend themselves by physical strength or by indictment or prosecution of the offenders.

*In re Brown,* 168 N. C., 417, the Court held that a newspaper criticism after the court had adjourned was personal to the judge and not a matter of contempt. That case was rested upon the ground that the court had adjourned.

In the *McCown case,* 139 N. C., 110, *Judge Walker* said: "As courts can exercise judicial functions only through their judicial officers, an assault upon such officer because he has discharged a required duty is necessarily an attack upon the court for what it has done in the administration of justice." That case holds that such conduct is direct contempt, and is constructively done in the presence of the court and falls within subsection, C. S., 978 (1). Besides the able and full discussion of the whole matter in that case, see, also, *S. v. Little,* 175 N. C., 743, in which it is held, *Hoke, J.,* that the power of the court to attach for contempt includes in its protection all officers of the court, jurors, attorneys, and others who in the line of their official duties are assisting the court in the dispatch of its duties, and all witnesses who are in attendance under subpœna. In that case the defendant in a criminal action had assaulted the State's witness before the trial, for the purpose of hinder-

.ing or delaying the administration of justice, and he was held to be in direct contempt, and that the respondent had no right of appeal, or to demand trial by jury or to demand that his hearing be removed before another judge. Nothing could be added to the very full and careful discussion of the subject-matter in *S. v. Little*.

The respondent was entitled to an appeal *(In re Parker, supra)*, but if he were not—if his sentence were excessive or the jurisdiction was doubtful—his remedy was by *hábeas corpus* proceedings and a *certiorari*, if necessary, from this Court. *In re Holley*, 154 N. C., 163.

Disregarding, however, this phase of the case, we find in the judgment of the court