HART COTTON MILLS, INC., a Corporation, v. ELIZABETH ABRAMS and 159 Other Individuals and TEXTILE WORKERS UNION OF AMERICA, CIO, an Unincorporated Association, and R. H. HARRIS, HOWARD PARKER, TED THOMAS, CHARLIE STANCIL, HENRY BYRD, MELVIN HOARD, J. C. HUGHES and SYLVESTER SAWYER in Their Capacities as Representatives and Officials of TEXTILE WORKERS UNION OF AMERICA, CIO.

(Filed 1 March, 1950.)

1. **Contempt of Court § 2b—**

Where a temporary restraining order enjoins defendants and all others with notice from doing certain prescribed acts, each person who willfully and intentionally violates the order after actual notice of its existence and contents, is guilty of contempt, notwithstanding that he may not have been formally served with the order.

2. **Contempt of Court § 5—Evidence held sufficient to support findings of fact by the court in this contempt proceeding.**

In this contempt proceeding based upon the violation of an order relating to picketing at plaintiff's mill, there was evidence that respondents were defendants in the action in which the order was issued, that they were apprised of the existence and contents of the order by advertisement in the local newspaper, by the posting of the order at the mill gate at which the violation occurred, and by the act of the sheriff in reading the order and directing them to move away from the proscribed area, and that after being so advised, respondents refused to disperse and persisted in the violation of the order by remaining in the proscribed area, completely blocking access to the mill, until after the time when workers were scheduled to report at the mill. *Held:* The evidence was sufficient to sustain

431

the court's findings to the effect that respondents violated the order and did so after having been apprised of its existence and contents, notwithstanding their contention that they had not been formally served with the order and that the confusion was brought about by lack of information as to its contents.

**3. Same—**

Where respondents are charged with concerted action in furtherance of a common purpose to violate a restraining order relating to picketing at plaintiff's mill, the booing or singing of members of the crowd, conveying a defiant intention to persist in the violation of the order after its terms had been read to them and they had been directed to disperse by the sheriff, *is held* competent against each respondent regardless of whether he personally participated in the booing or singing.

**4. Same—**

Where respondents are charged with concerted action in furtherance of a common purpose to violate an order enjoining picketing in a proscribed manner, a statement made by one of their leaders, and booing and singing by members of the crowd, conveying a defiant intention to persist in the violation of the order after being apprised of its terms, *is held* competent as a part of the *res gestœ* and to show the *quo animo* of the group.

**5. Same: Evidence § 30b—**

A witness may use a photograph or map or chart or diagram for the purpose of illustrating his testimony.

**6. Contempt of Court § 2b—**

Where it is found upon supporting evidence that each of respondents willfully and intentionally violated the terms of a restraining order, their oaths that their acts were not done with the motive of showing disrespect or contempt for the court will not purge them of the contempt.

**7. Same—**

The burden is upon respondents to show facts sufficient for the purpose of purging them of contempt when relied upon by them.

**8. Same—**

Where there is not sufficient evidence to show that one of respondents in contempt proceedings had actual notice of the terms of the order he is charged with violating, he will be discharged.

APPEAL by respondents from *Carr, J.,* in Chambers at Tarboro, N. C., 26-28 September, 1949, EDGECOMBE.

Action in equity for injunctive relief, heard on citation to show cause why the respondents should not be adjudged in contempt.

The employees of plaintiff Hart Cotton Mills, Inc., of Tarboro, N. C., went out on strike 12 May 1949. On 4 August 1949, plaintiff instituted this action to restrain and enjoin the defendants from certain alleged wrongful and unlawful acts in the manner and method of picketing the

mill. An order to show cause was issued by Bone, J., against the defendants herein.

After hearing on the rule to show cause, Bone, J., on 12 September, issued a temporary restraining order as follows:

"Now, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendants, and each of them, and all other persons to whom notice or knowledge of this order may come, until the merits of this cause are determined and until this Court orders otherwise, are hereby enjoined and restrained as follows:

"Within 150 yards of the fence surrounding the plaintiff's premises, no person or persons shall loiter or congregate or do any picketing, by standing, sitting, marching or otherwise, for the purpose of preventing other persons from working in the plaintiff's plant or doing business with the plaintiff, except as follows:

"At any one time no more than 25 persons may peaceably picket within each of the areas defined and circumscribed as follows: Commencing ten feet from the post on either side of any gate in the fence around the plaintiff's premises and extending away from that gate and six feet in width from the fence, and parallel with the fence, to a point ten feet from the next gate post.

". . .

"No person or persons shall interfere in any manner with the free ingress and egress of any other person whomsoever to and from the plaintiff's premises.

". . .

"The things which persons are hereby enjoined and restrained from doing, they, and each of them, are likewise enjoined and restrained from aiding or procuring or causing them to be done.

"This order shall become effective upon the plaintiff's filing with the Clerk of the Superior Court of Edgecombe County a written undertaking with sufficient sureties, justified before and approved by the said Clerk, in the amount of ONE THOUSAND DOLLARS guaranteeing to the amount specified that the plaintiff will pay to the defendants such damages as the defendants may sustain by reason of the issuance of this order, in the event it is finally determined that the same should not have been issued.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Sheriff of Edgecombe County shall post copies of this order in conspicuous places at and in the vicinity of the plaintiff's plant."

This order was served 13 September in the manner set forth in the court's finding of fact in its judgment on the rule to show cause.

The mill planned to open on the morning of the 14th. The time for the morning shift to enter the mill grounds was from 6:30 to 7:00 a.m. The main entrance gate is on St. James Street and is about twenty-five

feet wide.   On the morning of the 14th from 100 to 125 employees, including most of the respondents, gathered at the main gate prior to 6:30 and aligned themselves in and across the gate entrance in a solid mass from five to eight deep, completely closing or shutting off the entrance, where they remained until about 7:15.   About 6:15 or 6:30 the sheriff of the county appeared at the gate.   At about 6:40 he requested the attention of the group at the gate, and read to them the adjudication portion of the restraining order above quoted.   He then told them that they were then violating the order and directed or requested them to move.   The group in response began to boo and then sang: "We shall not be moved.   We are like a tree planted by the river."   They did not leave but continued to block the gate for at least thirty minutes and until after the time for the morning shift to enter the mill.   The respondents named in the court's judgment were members of the group blocking the gate and none of them except R. H. Harris and Dempsey Gurkins left when requested by the sheriff.

R. C. Thomas was in charge of the picketing and directed the picketers where to go and what to do.   He stated they were not going to let anyone enter the mill that morning.

On 15 September the plaintiff filed a motion, supported by affidavit, that the court cite 74 of the defendants, including the appellants, to appear and show cause why they and each of them should not be adjudged in contempt.

Burney, J., issued the citation returnable before Carr, judge presiding, at Tarboro, N. C., 21 September.   The respondents filed answer in which they profess their respect for the court and deny any intent to disobey or disregard its orders.   Ellis Worrell, Jr. filed affidavit denying he was present and was by consent discharged.   Lester Matthews also filed affidavit by way of answer in which he asserted he was at the small back gate of the plant on the morning of the 14th and never went to the main or St. James Street entrance.

The hearing was continued to 26 September on which date Carr, J., after hearing the evidence and arguments of counsel, which extended to 28 September, entered his findings of fact and judgment as follows:

"This cause coming on to be heard upon the plaintiff's petition that the persons named below be adjudged in contempt of this court, and the court having heard and considered the evidence which appears of record, and the court finding:

"1. That on or about September 12, 1949, by virtue of proceedings theretofore had in this cause as appear of record, Hon. Walter J. Bone issued an injunction or restraining order as appears of record herein; that on September 13, 1949 the Sheriff of Edgecombe County, North Carolina, posted copies of said order in the immediate vicinity of the

main entrance gate to the plaintiff's premises; that on the same date the principal enjoining and restraining provisions of said order were prominently printed in a newspaper which is published and distributed each day in the Town of Tarboro, North Carolina; that said issue of said newspaper also contained a full page advertisement in which the plaintiff called public attention to the issuance of the aforesaid order.

"2. That on the morning of September 14, 1949, commencing at approximately 6:30 A.M., a large crowd of persons massed themselves in and in front of the main entrance gate to the plaintiff's plant, said entrance gate being located on St. James Street in the Town of Tarboro, North Carolina; that at approximately 6:40 A.M. the Sheriff of Edgecombe County placed himself in front of the said crowd of people, stated to them that he held in his hand copy of a court restraining order and that he would read the same to them; that he then proceeded to read to the crowd all of the aforesaid order issued by Hon. Walter J. Bone, commencing with the words thereof, 'Now, Therefore, It is Hereby Ordered, Adjudged and Decreed:' that after completing the reading of the said order the said Sheriff of Edgecombe County informed and announced to the aforesaid crowd of people that they were in violation of the said order and asked and demanded of said crowd that they move away; that thereupon large numbers of people in the said crowd set up a loud 'booing'; that thereafter large numbers of people in the said crowd commenced to sing and did sing a song, the chief refrain of which was in the words, 'We Shall Not Be Moved'; that substantially the entire crowd of people did continue and remain standing massed as they theretofore had been in and in front of the entrance gate to the plaintiff's plant from approximately 6:30 A.M. until approximately 7:15 A.M., at which latter time the crowd of people began to disperse, this being approximately 30 minutes after the reading of the aforesaid order by the aforesaid Sheriff, and being approximately 15 minutes after the regular morning time for commencing work in the plaintiff's plant.

"3. That the Sheriff of Edgecombe County delivered a certified copy of said restraining order on the late afternoon of Tuesday, September 13th, to the defendant, R. C. 'Ted' Thomas, in person; that the said Thomas had theretofore acted as a leader or manager of picketing at the aforesaid entrance gate; that on the morning of September 14th, after some officers had arrived at the main entrance gate where a crowd was assembled as hereinbefore set out in Finding of Fact No. 2, and before the Sheriff had read parts of the restraining order to the crowd as set out in said Finding of Fact No. 2, the defendant, R. C. 'Ted' Thomas, while standing in said crowd stated in a voice that could be heard by officers at the scene, 'Nobody comes in here today.'

"4. That all of the persons named below were present in the aforesaid crowd of people from approximately 6:30 A.M. to 7:15 A.M.; that all of the persons named below while present in said crowd were standing in the immediate vicinity of the aforesaid entrance gates and in an area between the areas permitted for picketing by the aforesaid order and were thus standing massed in an area not permitted for picketing by the said order, the area in which they were thus standing consisting principally of the space in and in front of the aforesaid entrance; that all of the persons named below were part of a crowd of people who from approximately 6:30 A.M. to 7:15 A.M. did physically block the aforesaid entrance to the plaintiff's plant.

"5. That all of the persons named below on the morning of September 14, 1949, did intentionally and wilfully congregate and picket in mass within 150 yards of the fence surrounding the plaintiff's premises, in numbers exceeding 25 and not within the areas permitted by the said order, and more particularly in and in front of the aforesaid main entrance gate to the plaintiff's plant, for the purpose of preventing other persons from working in the said plant, and by such congregating and mass picketing did intentionally and wilfully interfere with, block and prevent free ingress into the said plant; that while said persons were congregating and picketing in and in front of the aforesaid main entrance gate to the plaintiff's plant, no person was seen undertaking during that time to enter and go through said main entrance gate into the plaintiff's plant.

"6. That no copy of said restraining order was ever served upon any of the persons named below with the exception of the defendant R. C. 'Ted' Thomas.

"7. That the persons hereinbefore referred to as being the persons named below are as follows: Jessie Beach, Frank Baker, Henry Bird, Mrs. Helen Beach, Nellie Carter Bass, Cora Brumbles, David Brock, Mae Crank, Fred Carlisle, Walter Driver, James Dunn, Joe Edmondson, Mrs. Grace Edmondson, Amos Ezzell, Alice Edmondson, Florence Gurkins, John H. Ford, Jimmie Harrington, A. C. Highes, Mrs. Pennie Hughes, Haywood Holland, Elizabeth Hogan, Mrs. Lillian Joyner, Mildred Gurkins Knowles, Thurman Lassiter, Mrs. Thurman Lassiter, John Lawhorn, Mrs. Rosa Long, Ethel Lawhorn, Luther Mitchell, Roy Modlin, Mrs. Ina Martin, Lester Matthews, James Overton, Margaret Phillips, Junior Phillips, Roy Pigg, Mrs. Reba Pigg, Charlie Stancil, Robert Stokes, Richard Staton, Mrs. Cora Lee Stokes, Mrs. Hattie Terry, Louis Twiddy, Ottis Taylor, R. C. Thomas, Eugene Umphlett, Richard Wilson, Clarence Whitley, George Williamson, J. R. Whitley, Mattie Wagner, Ebert Wilson.

"8. That the persons named in paragraph 7 above and each of them did in the manner and under the circumstances hereinabove set forth

intentionally and wilfully violate the aforesaid injunction and restraining order issued by the court in this cause.

"Now, Therefore, the Court does hereby find, conclude, order and decree that the persons named in paragraph 7 above and each of them are adjudged in contempt of this Court.

"It is further ordered, adjudged and decreed that the said persons and each of them be punished for their said contempt as follows:

"That the defendant R. C. 'Ted' Thomas be confined to jail in Edgecombe County for a term of thirty days, Execution of this jail sentence is suspended on condition that said defendant pay into the office of the Clerk of the Superior Court of Edgecombe County a fine of $250.00, and that the said defendant refrain and desist from any further violation of the restraining order referred to in this proceeding entered by his Honor, Walter J. Bone, Judge, on the 12th of September 1949, so long as said restraining order remains in force and effect.

"That as to the minor defendants named in this cause, to-wit: Grady Junior Phillips, by and through his Guardian *ad Litem* Lester Matthews, and Ebert Wilson, by and through his Guardian *ad Litem* Richard A. Wilson, it is ordered that prayer for judgment in this proceeding as to each of said defendants be continued upon condition that each of said defendants refrain and desist from any further violation of the aforesaid restraining order so long as the said restraining order is in force and effect.

"That as to each of the other defendants named in Paragraph 7 with the exception of the defendant R. C. 'Ted' Thomas, Grady Junior Phillips, by his Guardian *ad Litem* Margaret Phillips, Elizabeth Hagan, by her Guardian *ad Litem* Lester Matthews, and Ebert Wilson, by his Guardian *ad Litem* Richard A. Wilson, it is ordered that said defendants and each of them pay into the office of the Clerk of the Superior Court of Edgecombe County a fine of $50.00.

"Each of the defendants named in paragraph 7, with the exception of the minor defendants, Grady Junior Phillips, Elizabeth Hagan, and Ebert Wilson, is taxed with his or her pro rata part of the cost of this contempt proceedings, and as to the remaining cost of the contempt proceedings it is ordered that the plaintiff be taxed with said remaining cost.

"This 28th day of September 1949."

Respondents not named in paragraph 7 of the findings of fact were discharged. Those named therein excepted and appealed.

*Pierce & Blakeney and Henry C. Bourne for plaintiff appellee.*
*Robert S. Cahoon for respondent appellants.*

BARNHILL, J.   While the evidence consumes less than forty pages of the record, there are 243 assignments of error.   However, many of them are not brought forward and discussed in the brief of appellants.   Those that are preserved present four questions for consideration and decision: (1) Are the facts found by the court sufficient to support the judgment, and if so, (2) is there competent evidence sufficient to support the findings; (3) did the court admit incompetent evidence to the prejudice of the respondents; and (4) have the respondents purged themselves of any contempt on their part?

A mere reading of the findings of fact answers the first question.   It was not necessary that the order be formally served on each of the respondents.   Actual notice of its existence and contents was sufficient. *Lodge v. Gibbs,* 159 N.C. 66, 74 S.E. 743; *Wilson v. Bryan,* 195 N.C. 360, 142 S.E. 491; High, Injunctions, 4th Ed., sec. 1422.

The mandate of the court was operative as against all parties having notice thereof from the time it was issued.   To fix the liability of respondents for a violation of its terms, it was only necessary to show that they were actually apprised of its existence at the time they committed the acts alleged.   *Lodge v. Gibbs, supra;* High, Injunctions, sec. 1421.

There is substantial evidence in the record in support of each finding of fact made by the judge.   The appellants and others were gathered *en masse* in the area prohibited by the restraining order.   They were defendants in the action and knew a restraining order had been applied for and might be issued.   They were advised of the order and its contents and were told they were violating its terms.   Upon being requested to leave, they held their ground and declined to disperse.   Instead they greeted the request of the officer with boos.   They then sang a good hymn for the inappropriate purpose of conveying a defiant intention to remain where they were.

Indeed, none of the appellants, other than Lester Matthews and Clarence Whitley, denied that they were present at the main gate in a group which completely blocked the entrance.   Nor do they deny notice of the injunction or challenge the evidence as to the conduct of the group at the time.   They merely deny that they engaged in mass picketing in the prohibited area on the morning of 14 September for the purpose of preventing other persons from working in said plant or intentionally prevented free ingress into the plant and aver "that whatever confusion or disturbance, or congregating, or related activity, which occurred on or about September 14, 1949, by any group of persons, defendants, or otherwise, was to the best of our knowledge and belief caused by genuine confusion brought about by lack of information about what order, if any, this Court had issued, what the contents of any order were, what was

required of the defendants in this cause, and others." In addition to this they assert that the injunction has never been served upon them.

The appellants and others were acting in concert in furtherance of a common purpose. Each was a party to what the others did and said in the course of their conduct in violation of the court order. Those who did not boo or sing were present, participating in the mass blocking of the company gate. Hence the exceptions to the evidence as to what was done and said at the time are without merit. *Henderson-Snyder Co. v. Polk,* 149 N.C. 104; *Saunders v. Gilbert,* 156 N.C. 463, 72 S.E. 610; *S. v. Davis,* 177 N.C. 573, 98 S.E. 785; *S. v. Beal,* 199 N.C. 278, 154 S.E. 604; *S. v. Ritter,* 199 N.C. 116, 154 S.E. 62. The testimony as to the statement made by Thomas and as to the booing and singing was competent also as a part of the *res gestæ* and to show the *quo animo* of the group. *Saunders v. Gilbert, supra; S. v. Davis, supra; S. v. Rumple,* 178 N.C. 717, 100 S.E. 622; *Manufacturing Co. v. Arnold,* 228 N.C. 375.

That a witness may use a photograph or map or chart or diagram to illustrate his testimony and make it more understandable to the jury is settled law in this jurisdiction. *S. v. Shepherd,* 220 N.C. 377, 17 S.E. 2d 469; *S. v. Holland,* 216 N.C. 610, 6 S.E. 2d 217; *S. v. Mays,* 225 N. C. 486, 35 S.E. 2d 494; *S. v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824.

The oath of a contemner is no longer a bar to a prosecution for contempt. "The question is not whether the respondent intended to show his contempt for the court, but whether he intentionally did the acts which were a contempt of the court." *In re Fountain,* 182 N.C. 49, 108 S.E. 342, 18 A.L.R. 208; *In re Parker,* 177 N.C. 463, 99 S.E. 342; *Herring v. Pugh,* 126 N.C. 852; *In re Young,* 137 N.C. 552; *In re Gorham,* 129 N.C. 481.

"The violation of a judicial mandate stands upon different ground, and the only inquiry is, whether its requirements have been wilfully disregarded. If the act is intentional, and violates the order, the penalty is incurred, whether an indignity to the Court or a contempt of its authority, was or was not the motive for doing it." *Green v. Griffin,* 95 N.C. 50; *Nobles v. Roberson,* 212 N.C. 334.

The respondents having sought to purge themselves, the burden was on them to establish facts sufficient for that purpose.

While Lester Matthews denied he was present at the main gate at the time the sheriff appeared and read the injunction, there is positive evidence in the record that he was there in the group and remained until the crowd dispersed.

The plaintiff offered evidence tending to show that Clarence Whitley was at the office gate at the time, and it is conceded by plaintiff that he was inadvertently included in the judgment in lieu of Clarence White. As the court below concluded there was not sufficient evidence that those

at the office gate had actual notice of the injunction, Clarence Whitley will be discharged.

The other exceptions and assignments of error are without substantial merit. We find in them no cause for disturbing the judgment. Except as to Clarence Whitley, the judgment entered is

Affirmed.