ERWIN MILLS, INC., v. TEXTILE WORKERS UNION OF AMERICA, C.I.O.; TEXTILE WORKERS UNION OF AMERICA, C.I.O. LOCAL #250, ERWIN, NORTH CAROLINA; HOWARD HARRIS; B. F. MORRISON; ERNEST PHILLIPS; JAMES F. CAMERON; FRANK RALPH; J. THOMAS WEST; DAVID MORRISON; EDWARD HOLMES; E. C. JOHNSON, JR.; JAMES LACEY JONES; EARL SUGGS; BILLY SLOAN; KATHLEEN NORRIS; JOSEPH D. BEASLEY; JOHNNIE LUCAS; SHERRILL ENNIS; CORBETT LLOYD; ODELL MORRISON; WILEY B. TEW; WOODROW NORRIS; JAMES COX; LESSIE PRICE; RODERICK MORRISON; WILLIAM POINDEXTER; PRENTIS FARMER; EDITH McLAMB; IRA MATTHEWS, JR.; JESSIE WILLIFORD; AND OTHER PERSONS UNKNOWN TO PLAINTIFF, TO WHOM THIS ACTION MAY BECOME KNOWN.

(Filed 31 October, 1951.)

**1. Constitutional Law § 11: Courts § 12—**

While the regulation of peaceful strikes in industries engaged in interstate commerce is in the exclusive jurisdiction of the Federal Government, 29 USCA, section 141, *et seq.,* our State Court in the exercise of the State's inherent police power has jurisdiction of an action to restrain mass picketing, obstructing or interfering with factory entrances, and the threatening and intimidation of employees in the conduct of a strike.

**2. Contempt of Court § 2b—**

Where a temporary order is issued against defendants and also against all others to whom notice and knowledge of its contents might come, such others who violate its provisions after notice and knowledge of the contents of the order may be held in contempt to the same extent as if they had been formally served.

**3. Contempt of Court § 4—**

An order to show cause why named persons should not be held in contempt of court for willful violation of a court order is not required to be based upon a petition, but such order may be issued upon affidavit or other verification charging violation of the order. G.S. 5-7.

APPEAL from *Williams, J.*, at Chambers, Sanford, North Carolina, 16 June, 1951. From HARNETT.

This appeal arises out of a civil action instituted on 12 April, 1951, wherein the plaintiff petitioned the Superior Court of Harnett County for injunctive relief against the alleged acts of defendants and others in preventing and impeding plaintiff in the operation of its textile plant at Erwin, North Carolina, by mass picketing, and interference with the free ingress and egress to and from its plant, by the use of threats, abuse, and violence against employees and others seeking ingress and egress to and from its plant.

A temporary restraining order was issued on 24 April, 1951, by Williams, J., Resident Judge of the Fourth Judicial District of North Carolina, based upon the plaintiff's verified application and verified complaint theretofore filed in the action, the same being treated as an affidavit which, among other things, restrained the defendants and all those to whom notice and knowledge of the order might come, as follows:

"1. From interfering in any manner with free ingress and egress to and from plaintiff's premises.

"2. From assaulting, threatening, abusing, or in any manner intimidating persons who work or seek to work in, or lawfully seek to enter the plaintiff's plant.

"3. From having more than 25 persons at any one time as peaceful pickets at any gate to the plaintiff's plant provided that no person, including pickets, may approach closer to any gate of plaintiff's plant than 50 feet; and provided further that no person, or persons, shall block driveways leading to gates of said plant or right of way of railroad which enters said plant.

"It is the intent and purpose of this paragraph 3 that no person, whether engaged in picketing or not, other than persons lawfully seeking to approach and enter the plaintiff's premises for the purpose of transacting lawful business, shall approach closer to any gate of plaintiff's plant than 50 feet.

"4. No person shall abuse, intimidate, strike, threaten or use any vile, abusive, or violent or threatening language at or towards any person on the plaintiff's premises, or any person entering or leaving said premises, and shall in no manner interfere with or impede any motor vehicle, wagon, cart, truck, animal, or railroad trains or cars or engines thereof in approaching or leaving plaintiff's premises, and shall in no manner

interfere with the free ingress and egress of any person or vehicle, or any animal, to or from the plaintiff's plant, and along and over any of the streets or roads adjacent to the plaintiff's plant.

"This order shall become effective upon the plaintiff's filing with the Clerk of the Superior Court of Harnett County, a written undertaking with sufficient sureties justified before and approved by said clerk in the amount of $2,000."

The court further ordered the sheriff of Harnett County to post copies of the order in conspicuous places at and in the vicinity of the plaintiff's plant, and particularly at all entrance gates to said plant; and further directed the defendants to appear before said court on Saturday, May 5, 1951, at 10:30 a.m., at the Courthouse in Lee County, North Carolina, or as soon thereafter as they may be heard, then and there to show cause, if any they may have, why this order should not be continued to the trial of the action on its merits.

Bond was given as required by the order and copies of the order and notice to show cause were served on the defendants David Holt Morrison and Ira Matthews, Jr., on 24 April, 1951, and on the defendant William Poindexter on 26 April, 1951. Thereafter, certain affidavits were filed with the court, charging six employees of the plaintiff with wilfully having done certain acts and things prohibited by the temporary restraining order. Whereupon, on 3 May, 1951, Williams, J., issued against the six striking employees of the plaintiff, two orders to show cause why they should not be punished for contempt, one order being directed against the defendants David Holt Morrison, Ira Matthews, Jr., and William Poindexter, and the other being directed against the respondents Ellis Coats, Cecil Turnage, and Mrs. Rena Matthews who were not parties to the cause.

The hearing on these show cause orders was set before his Honor, Williams, J., in Chambers at the Lee County Courthouse at Sanford, North Carolina, at 10:00 a.m., on 12 May, 1951.

The order against David Holt Morrison, William Poindexter and Ira Matthews, Jr., recited that after service of the restraining order on them it appeared from the various affidavits referred to therein and attached thereto that the defendants had wilfully done certain acts prohibited in the restraining order. The order to show cause against Ellis Coats, Cecil Turnage, and Mrs. Rena Matthews, recited that after posting of notices of the restraining order at the plant gates, these respondents "had full knowledge of the fact that the temporary restraining order had been issued and of the contents thereof" and it appeared from various affidavits referred to therein and attached thereto, that the respondents had wilfully done certain acts prohibited in the restraining order. The orders to show cause and copies of the affidavits affecting the respective parties, were served on each of the defendants and respondents.

By consent of all parties to this action, an order was entered on 11 May, 1951, continuing the temporary restraining order until the final hearing on its merits.

The defendants filed a demurrer to the complaint on 11 May, 1951, and moved for a dismissal of the action on the ground (1) that the plaintiff's complaint failed to state a cause of action; and (2) that the action arises out of a labor dispute between the plaintiff, a corporation engaged in the manufacture and sale of textile products in interstate commerce, and its employees and their union, a labor organization, and that the allegations of the complaint amount to no more than an allegation of an unfair labor practice on the part of the defendant labor organization and its agents in violation of Section 8 (b) (1) and other sections of the Labor Management Relations Act of 1947, and that the exclusive jurisdiction of the controversy is in the National Labor Relations Board and in the federal courts, thereby excluding the courts of North Carolina from having any jurisdiction in the controversy.

Likewise, each of the defendants and respondents on 19 May, 1951, filed a demurrer to and a motion to dismiss the contempt proceeding on the ground (1) that the court is without jurisdiction, stating the same ground therefor as set out in the demurrer to the complaint; and (2) that there is no petition or other proper document which states facts sufficient to constitute a cause of action, or upon which the court may issue an order to show cause or punish the defendants or respondents for contempt.

This cause finally came on to be heard before his Honor, Williams, J., at Chambers in Sanford, North Carolina, on 15 June, 1951, upon the demurrer to the complaint and the demurrer to and the motion to dismiss the contempt proceeding. All parties having appeared through counsel and the court having heard arguments of counsel on the demurrers and motion to dismiss the contempt proceeding, the court overruled the demurrers, and denied the motion to dismiss the contempt proceeding and entered judgments accordingly on 16 June, 1951.

The defendants appealed to the Supreme Court from the judgment overruling the demurrer to the complaint, and the defendants and respondents appealed from the judgment overruling the demurrer to and motion to dismiss the contempt proceeding, assigning error.

*Robert S. Cahoon for appellants.*
*Fuller, Reade, Umstead & Fuller and James L. Newsom for appellee.*

DENNY, J. The first assignment of error is based upon the exception to the ruling of the court below in overruling the defendants' demurrer to the complaint. This exception is bottomed upon the contention of the appellants that plaintiff's cause of action, if any, arises out of a labor

dispute between the plaintiff, a corporation engaged in the manufacture and sale of textile products in interstate commerce, and its employees and their union, a labor organization. The defendants contend, therefore, that the allegations of the complaint are in substance to the effect that defendants by concerted action, directed by and through the defendant labor organization, are engaged in picketing, accompanied by violence, threats of violence, and mass picketing which is designed to and does intimidate and cause employees who do not desire to participate in the strike, so as to compel them against their wishes to refrain from working in plaintiff's textile plant. These allegations, the defendants contend, amount to no more than an allegation of an unfair labor practice on the part of the defendant labor organization and its agents in violation of section 158 (b) (1), 29 USCA, and other sections of the Labor Management Relations Act of 1947 which Act, defendants contend, vested the exclusive power to regulate and prevent the conduct complained of in plaintiff's complaint, in the National Labor Relations Board and in the federal courts, thereby excluding the courts of the several states from jurisdiction in such controversies.

The appellants are relying upon certain provisions of the Labor Management Relations Act, popularly known as the Taft-Hartley Act, and hereinafter referred to as such, the pertinent parts of which are set forth in the numbered paragraphs below.

1. "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a) (3) of this title." 29 USCA, section 157.

2. "It shall be an unfair labor practice for a labor organization or its agents—(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title . . ." 29 USCA, section 158 (b) (1).

3. "The Board is empowered as hereinafter provided to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise . . ." 29 USCA, section 160 (a).

4. "Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to

issue and cause to be served upon such person a complaint stating the charges in that respect . . ." 29 USCA, section 160 (b).

5. "The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in unfair labor practice, to petition any district court of the United States . . . for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper." 29 USCA, section 160 (j).

The question for determination before us is simply this: Does the conduct of the defendants, complained of in the plaintiff's complaint, come within the unfair labor practices referred to in the above provisions of the Taft-Hartley Act?

It is now established by decisions of the Supreme Court of the United States that the regulation of peaceful strikes for higher wages, in industries engaged in interstate commerce, is closed to state regulation by the National Labor Relations Act as amended by the Taft-Hartley Act. 29 USCA, section 141, *et seq.; International Union of U.A.A.&A. v. O'Brien,* 339 U.S. 454, 94 L. ed. 978; *Amalgamated Asso. v. Wisconsin Employment Relations Board,* 340 U.S. 383, 95 L. Ed. 364. However, this does not mean that the courts of the several states are left powerless to exercise their traditional police power and injunctive control over violence and unlawful conduct committed during the course of a strike or labor dispute, and it makes no difference whether such unlawful acts are committed by a labor organization or its agents, by non-union employees, or by the employer or its agents, or by others.

In the case of *Allen-Bradley Local v. Wisconsin Employment Relations Board,* 315 U.S. 740, 86 L. Ed. 1154, decided in 1942, prior to the enactment of the Taft-Hartley Act, the labor union appealed from a decision of the Supreme Court of Wisconsin, affirming the judgment of the Circuit Court for Milwaukee County, sustaining and enforcing an order of the Wisconsin Employment Relations Board in which the conduct complained of on the part of the labor union and certain of its officers and members, was alleged to be similar in character to that alleged in the instant case. The Wisconsin Employment Relations Board issued an order which, among other things, ordered the union, its officers, agents, and members to cease and desist from: "(a) Mass picketing. (b) Threatening employees. (c) Obstructing or interfering with the factory entrances. (d) Obstructing or interfering with the free use of public streets, roads, and sidewalks . . ." The union challenged the jurisdiction of the state Board on the identical ground interposed by the appellants, that is, that the matters in controversy were subject to the provisions of the National Labor Relations Act and that the National Labor Relations

Board had exclusive jurisdiction of the matters in controversy. The Supreme Court of the United States did not agree with the contention of the appellant, and in affirming the judgment of the Supreme Court of Wisconsin said, among other things: "We agree with the statement of the United States as *amicus curiæ* that the federal Act was not designed to preclude a State from enacting legislation limited to the prohibition or regulation of this type of employee or union activity. The Committee Reports on the federal Act plainly indicate that it is not 'a mere police court measure' and that authority of the several states may be exerted to control such conduct. Furthermore, this Court has long insisted that an 'intention of Congress to exclude States from exerting their police power must be clearly manifested,'" citing numerous authorities. The Court further said: "Congress has not made such employee and union conduct as is involved in this case subject to regulation by the federal Board. Nor are we faced here with the precise problem with which we were confronted in *Hines v. Davidowitz*, 312 U.S. 52, 85 L. Ed. 581. In the *Hines Case*, a federal system of alien registration was held to supersede a state system of registration. But there we were dealing with a problem which had an impact on the general field of foreign relations . . . Therefore we were more ready to conclude that a federal act in a field that touched international relations superseded state regulation than we were in those cases where a State was exercising its historic powers over such traditionally local matters as public safety and order and the use of streets and highways. *Maurer v. Hamilton*, 309 U.S. 598, 84 L. Ed. 969, 60 S. Ct. 726, 135 A.L.R. 1347. Here we are dealing with the latter type of problem. We will not likely infer that Congress by the mere passage of a federal Act has impaired the traditional sovereignty of the several States in that regard . . . Here, as we have seen, Congress designedly left open the area for state control . . . But, as we have said, the federal Act does not govern employee or union activity of the type here enjoined. And we fail to see how the inability to utilize mass picketing, threats, violence, and other devices which were here employed impairs, dilutes, qualifies or in any respect subtracts from any of the rights guaranteed and protected by the federal Act. Nor is the freedom to engage in such conduct shown to be so essential or intimately related to a realization of the guarantees of the federal Act that its denial is an impairment of the federal policy. If the order of the state Board affected the status of the employees or if it caused a forfeiture of collective bargaining rights, a distinctly different question would arise, but since no such right is affected, we conclude that this case is not basically different from the common situation where a State takes steps to prevent breaches of the peace in connection with labor disputes."

In *International Union v. Wisconsin Employment Relations Board*, 336 U.S. 245, 93 L. Ed. 651, the controversy arose over the conduct of

the union and its members after efforts to negotiate a new bargaining agreement had reached a deadlock. The labor union, for the purpose of putting pressure upon the employer, instigated intermittent and unannounced work stoppages by calling on twenty-six occasions special meetings of the union during working hours at any time the union saw fit. The employees would leave work to attend these meetings, without warning to the employer or notice as to when or whether they would return and without informing the employer of any specific demands which these tactics were designed to enforce nor of the concession it could make to avoid them. The Wisconsin Employment Relations Board directed the labor union to cease and desist from instigating these intermittent and unannounced work stoppages. The order of the state Board was upheld by the Supreme Court of the State of Wisconsin, 250 Wis. 550, 27 N.W. 2d, 875, 28 N.W. 2d 254, and in affirming the judgment of the Wisconsin Court, the Supreme Court of the United States said: "This procedure was publicly described by the Union leaders as a new technique for bringing pressure upon the employer. It was, and is candidly admitted that these tactics were intended to and did interfere with production and put strong economic pressure on the employer, who was disabled thereby from making any dependable production plans or delivery commitments. And it was said that 'this can't be said for the strike. After the initial surprise or walkout, the company knows what it has to do and plans accordingly.' It was commended as a procedure which would avoid hardships that a strike imposes on employees and was considered 'a better weapon than a strike.' "

It will be noted that when the orginial order of the State Board and the decision of the State Supreme Court were made, the National Labor Relations Act was in effect, but since the order imposed a continuing restraint which it was contended, at the time of the hearing in the Supreme Court of the United States, was in conflict with the provisions of the Taft-Hartley Act, 29 USCA, sections 141-197, which amended the earlier statute, the Court considered the State action in relation to both Federal Acts. The Court said: "The Labor Management Relations Act declared it to be an unfair labor practice for a union to induce or engage in a strike or concerted refusal to work where an object thereof is any of certain enumerated ones . . . Nevertheless the conduct here described is not forbidden by this Act and no proceeding is authorized by which the Federal Board may deal with it in any manner. While the Federal Board is empowered to forbid a strike when and because its purpose is one that the Federal Act made illegal, it has been given no power to forbid one because its method is illegal—even if the illegality were to consist of actual or threatened violence to persons or destruction of property. Policing of such conduct is left wholly to the states. In this case there was also evidence of considerable injury to property and in-

timidation of other employees by threats and no one questions the state's power to police coercion by those methods. It seems to us clear that this case falls within the rule announced in *Allen-Bradley (supra)* that the state may police these strike activities as it could police the strike activities there . . . There is no existing or possible conflict or overlapping between the authority of the Federal and State Boards, because the Federal Board has no authority either to investigate, approve, or forbid the union conduct in question. This conduct is governable by the states or it is entirely ungoverned . . . We think that this recurrent or intermittent unannounced stoppage of work to win unstated ends was neither forbidden by federal statute nor was it legalized and approved thereby. Such being the case the state police power was not superseded by congressional Act over a subject normally within its exclusive power and reachable by federal regulation only because of its effects on that interstate commerce which Congress may regulate." See also *Ackerman v. International Longshoremen's & W. Union,* 187 F. 2d 860; and *Oil Workers International Union v. Superior Court,* 103 Cal. App. 2d 512, 230 P. 2d 71.

The cases of *International Union of U.A.A.&A. v. O'Brien, supra,* and *Amalgamated Asso. v. Wisconsin Employment Relations Board, supra,* strongly relied upon by the appellants, do not support their position. In the *International Union case* the controversy arose out of a conflict between the provisions of a Michigan statute and the provisions of the Taft-Hartley Act as to the time and manner of calling a strike. The Court held, and properly so, that since the Taft-Hartley Act contained express provisions prescribing when and how notice shall be given of an intention to strike, State legislation in conflict therewith must yield. And in the *Amalgamated Asso. case* the question involved was whether the State of Wisconsin could by statute prohibit a strike against a public utility and compel arbitration of a labor dispute after the parties had failed to reach an agreement through collective bargaining. The action which was instituted by the union involved only the constitutionality of the State statute and presented no question with respect to the right of the state to exert its police power to prevent violence and other conduct of the character complained of herein.

In our opinion there is nothing in the provisions of the Taft-Hartley Act or in the decisions of the Supreme Court of the United States in construing the provisions thereof that interferes with the right of a State to exercise its traditional police power to suppress violence, to prevent breaches of the peace, to prevent an employer and his employees from being intimidated by violence or the threat of violence or to protect property and to safeguard its lawful use during a strike or labor dispute. The proper exercise of such power does not impinge upon the lawful rights of labor within the purview of the Constitution of this State, the

Constitution of the United States, or the Taft-Hartley Act. Therefore, the first exception and assignment of error is overruled.

The appellants' second exception and assignment of error challenges the method of obtaining the order to show cause why the defendants and respondents should not be punished for contempt.

The restraining order was duly issued and served on the defendants David Holt Morrison, William Poindexter, and Ira Matthews, Jr. The order was also issued against all others to whom notice and knowledge of its contents might come. It follows, therefore, if the respondents Ellis Coats, Cecil Turnage, and Mrs. Rena Matthews knew that such order had been issued and knew the contents thereof, they would be subject to its provisions to the same extent as if they had been formally served with the order. *Hart Cotton Mills, Inc. v. Abrams*, 231 N.C. 431, 57 S.E. 2d 803.

The defendants contend, however, that an order to show cause why a person should not be attached for contempt, must be based upon a petition or other proper document and that the affidavits filed with the court in this action do not meet such requirement. The contention is without merit. G.S. 5-7, which reads as follows: "When the contempt is not committed in the immediate presence of the court, or so near as to interrupt its business, proceedings thereupon shall be by an order directing the offender to appear, within reasonable time, and show cause why he should not be attached for contempt. At the time specified in the order the person charged with the contempt may appear and answer, and, if he fail to appear and show good cause why he should not be attached for the contempt charged, he shall be punished as provided in this chapter." And whether the movent uses a petition or other document to obtain an order to show cause in such proceeding, it is the affidavit or verification that imports the verity to the charge of violating the judgment or order of the court, which is required upon which to base an order to show cause in such instances. G.S. 5-7; *Safie Manufacturing Co. v. Arnold*, 228 N.C. 375, 45 S.E. 2d 577; *In re Deaton*, 105 N.C. 59, 11 S.E. 244.

The rulings of the court below on both demurrers and the motion to dismiss the contempt proceeding will be upheld on the respective judgments entered.

Affirmed.