ROBERT P. CALDWELL AND WIFE, DOROTHY G. CALDWELL, AND OTHERS ON BEHALF OF THEMSELVES AND ALL OTHER PARTIES OWNING LOTS NOS. 1 THROUGH 15, INCLUSIVE, OF THE HARRIET HANNA ESTATE LANDS AS SHOWN ON PLAT OF SAME RECORDED IN PLAT BOOK 3 AT PAGE 116 IN THE OFFICE OF THE REGISTER OF DEEDS FOR GASTON COUNTY, WHO MAY COME IN AND BE MADE PARTIES PLAINTIFF, v. ANNIE BELLE BRADFORD AND HER HUSBAND, WILLIAM O. BRADFORD.

(Filed 19 March, 1958)

**1. Appeal and Error § 22—**

A sole exception to the judgment and assignment of error that the court erred in signing the judgment and in his conclusions and findings of fact for that they were against the weight of, and not sustained by, the evidence, is a broadside assignment of error unsupported by exception, which does not present for review the competency or sufficiency of the evidence upon which the findings are based.

**2. Deeds § 16b—**

Where the owners of contiguous lots sign an agreement making the lots subject to residential restrictions, and thereafter, because of the change in character of the neighborhood, the owners of 85 per cent of the property subject to the restrictions execute a release from and revocation of such restrictions, a court of equity may refuse to enjoin the violation of the residential restrictions on the ground that the enforcement of the restrictions would be unjust and inequitable.

APPEAL by plaintiffs from *Crissman, J.,* August Civil Term, 1957, of GASTON.

Plaintiffs seek to enjoin defendants from using certain of their property for business purposes in violation of an alleged valid and enforceable restrictive covenant.

A jury trial was waived; and the parties agreed "that the Court hear this matter, find the facts and render judgment thereon."

The hearing was "upon the complaint and the answer . . . , asked to be taken as and deemed to be affidavits by the respective parties, together with the exhibits attached . . ., and upon the agreed statement of facts."

The court's findings of fact include the following:

"3. That the character of the community in which the lots in controversy are located had undergone a change in that Wilkinson Boulevard has become a business area instead of a residential area.

"4. . . . that ninety (90%) per cent of the owners of more than eighty-five (85%) per cent of the property which was allegedly restricted, released, waived, and revoked said restrictions by signing that agreement (defendants' Exhibit A) . . . and that said agreement . . . constituted a cancellation by agreement of said owners.

"5. . . . that there are now and have been at all times since the plaintiffs acquired Lots Nos. 2 and 3 . . ., 3 tourist homes in the lots referred to . . .; that one tourist home has cabins adjacent thereto and used in connection therewith and that said tourist homes have been openly operated and that the plaintiffs have acquiesced in the operation of said tourist homes for years prior to the institution of this action; and that said tourist homes constitute businesses and were in violation of said restrictive covenants.

"6. That the restrictions contained in the plaintiffs' EXHIBIT A are not beneficial to the property described in the Complaint, but, on the contrary, are detrimental and injurious due to the fact that said property is much more valuable as business property than it is as residential property.

"7. . . . that said property has been designated as 'neighborhood trading' zone under the 'Zoning Ordinance for the City of Gastonia' as adopted on the 24th day of October, 1950.

"8. . . . that it would be unjust and inequitable to require the enforcement of the purported restrictions for that the lots of the defendants are valuable as business property, and that its value as business property is much greater than its value as residential property."

The agreed statement and the exhibits disclose, *inter alia*, the facts set out below, which are stated to explain the significance of the court's said findings.

Plaintiffs own Lots 2 and 3, and defendants own Lots 14 and 15, as shown on recorded map (dated August 24, 1929) of the Harriet Hanna Estate property.

The map, although referred to repeatedly, was not included in the record on appeal. Presumably, Lots 1-15, inclusive, as shown thereon, front on Highway 29 (Wilkinson Boulevard) and consist of contiguous lots numbered consecutively, e.g., Lot 1 adjoins Lot 2, Lot 2 adjoins Lot 3, etc.

"There are more than 25 numbered, and several unnumbered, lots" shown on said map; but the record does not indicate the location of the numbered lots (other than Lots 1-15, inclusive), nor does it indicate the location of the unnumbered lots.

Plaintiffs rely upon their Exhibit A, a recorded agreement dated February 28, 1939, which, *according to its recitals*, was executed by the owners of Lots 1-15, inclusive, whereby the parties agreed to bind themselves, their heirs, executors, administrators and assigns, "to restrict and they do hereby restrict" Lots 1-15, inclusive, as shown on said map, to use for residential purposes only. This agreement sets forth that it is made "in consideration of the purchase of Lot No. 13 . . . by Van A. Covington, and others, and for valuable considerations." According to recitals therein, "certain parties (had) started to erect a warehouse on Lot No. 13 . . . and the owners of the other lots . . . objected," and thereupon the owner sold Lot 13 "to S. M. Stewart, Trustee for himself, and others." In respect of Lot 13, this agreement was executed by "S. M. Stewart, Trustee." It was not executed by Van A. Covington or other person identified as a beneficial owner of Lot 13.

The recitals in said agreement of February 28, 1939, were erroneous in two respects, viz.:

1. Lot 2, one of the lots now owned by plaintiffs, was then owned by Harry F. McArver. He did not sign the agreement nor was he named therein as a party.

2. "A triangular portion of said Lots 14 and 15" was then owned by Lillian McLean Mason. She did not sign the agreement nor was she named therein as a party. The record does not reveal the location, dimensions, etc., of said "triangular portion of said Lots 14 and 15."

On February 16, 1956, when this action was commenced, the defendants "owned the residue of Lots 14 and 15"; but "the defendants, under mesne conveyances, now hold record title to that triangular portion as a valuable part of their property on Wilkinson Boulevard in the City of Gastonia."

When the case was heard, plaintiffs owned Lots 2 and 3, of which Lot 2 was never subject to the restriction or purported restriction, and defendants owned Lots 14 and 15, of which the said "triangular portion" was never subject to the restriction or purported restriction. Presumably, Lots 4-13, inclusive, lie between plaintiffs' Lot 3 and defendants' Lot 14.

Defendants' Exhibit A is a recorded agreement dated October 27, 1955, executed by "all of the . . . owners of Lots 1 through 15, with the exception of the plaintiffs herein," whereby they did "absolutely and forever, revoke, terminate, cancel and render null and void" the agreement of February 28, 1939, "insofar as said Agreement relates

to the restriction of said Lots Nos. 1 to 15, inclusive, for the use of residential purposes only," and provided that said agreement "shall be binding upon and shall inure to the benefit of the undersigned and their respective heirs, distributees, personal representatives, successors and assigns." The parties to defendants' Exhibit A set forth therein facts that impelled them to make and execute said agreement, including facts tending to show that the property had undergone a radical, substantial and fundamental change in character, that is, from residential property to business property.

The court adjudged that plaintiffs were not entitled to the injunctive relief sought, dismissed the action and taxed plaintiffs with the costs.

Plaintiffs excepted and appealed.

*L. B. Hollowell and Verne E. Shive for plaintiffs, appellants.*
*O. A. Warren and Wade W. Mitchem for defendants, appellees.*

BOBBITT, J.   Plaintiffs' only exception is "to the signing and entering of the . . . Judgment"; and plaintiffs' only assignment of error is "that the Court erred in signing the judgment, . . . and in his conclusions and findings of fact upon the evidence for that they were against the weight, and not sustained by, the evidence."

To the extent plaintiffs' assignment of error purports to challenge the court's findings of fact it is not supported by exception. Moreover, it is broadside. It does not present for review the competency or sufficiency of the evidence upon which the findings of fact are based. Whether the findings of fact support the judgment and whether error of law appears on the face of the record are the only questions presented by plaintiffs' exception, appeal and assignment of error. *Weddle v. Weddle,* 246 N.C. 336, 98 S.E. 2d 302, and cases cited.

We pass, without decision, whether plaintiffs' Exhibit A was sufficient, as of February 28, 1939, to impose upon Lots 14 and 15, except said "triangular portion," a residential use restriction, enforceable by the owner of Lot 3, one of the two lots now owned by plaintiffs; for, assuming the validity of such restriction as of February 28, 1939, on legal principles discussed fully in *Shuford v. Oil Co.,* 243 N.C. 636, 91 S.E. 2d 903, and cases cited, the said findings of fact fully support the judgment.

Since all owners of Lots 1-15, inclusive, except plaintiffs, executed the agreement of October 27, 1955, defendants' Exhibit A, plaintiffs' declaration, set forth in the caption, to the effect that this action was instituted on behalf of themselves and *all other parties* owning Lots 1-15, inclusive, "who may come in and be made parties plaintiff," would seem unrealistic.

Affirmed.