HARRIET COTTON MILLS v. LOCAL UNION NO. 578, TEXTILE WORK-
ERS UNION OF AMERICA (AFL-CIO); TEXTILE WORKERS UNION
OF AMERICA (AFL-CIO); JOHNNY ROSE, CHARLIE THOMAS
DUKE, CLINT ROBERSON, HILTON PARRISH, WALTER C. WAT-
KINS, ANDREW PENDERGRASS, LeROY WILLIAMSON, WOODROW
GOODING, JOHN HENDERSON, HOMER ROBERTS, JR., DOUGLAS
ROSE, CARL NEAL, LEE HARRIS, HENRY HARRIS, CHARLIE
HARRIS, HERBERT PARRISH, RANSOM HARGROVE, JOYCE R.
MEDLIN, ESTHER C. ROBERSON, RACHEL PIRTLE, BOSHER EU-
BANKS, ETTA AYSCUE, LEWIS WRIGHT, CLYDE WOODLIEF,
GEORGE ROSE, MRS. GEORGE ROSE, EDITH J. PEOPLES,
BLANCHE LEWIS, WARREN WALKER, SALLY JOE WALKER, AL-
BERTA ROSE, RUBY R. CURRIN, MILTON CURRIN, DORTITH
THOMPSON, WILLIE JARRELL, FRED LEE COLLIER, WILLIAM
CHOPLIN, DAVID SAMUEL PULLEY, DARRELL HEDGEPETH,
LEWIS CLAYTON, MILO CLEATON, EARL BENNETT, THOMAS
STARNES, HERBERT INSCOE, CLARENCE AYSCUE, ANDREW
MEDLIN, OSCAR FAULKNER, RANDELL SMITH, LAWRENCE
PEACE, CURTIS ROSE, JOHN FAUCETT, RALPH FAUCETT, JESSIE
ROBERSON, LOU VENE B. COGHILL, VIRGINIA R. PEOPLES,
SARAH D. PACE, ALVIN C. BREEDLOVE, LULA BARHAM, DORSEY
EATMAN, JAMES EATMAN, WILLIAM C. VOYLES, MYRTLE JOHN-
SON, MYRTLE P. PEOPLES, BRANSOM BLAKE, MILDRED BLAKE,
HAROLD VIVERETTE, LONNIE FAISON, JOHNNY MARTIN, TOM
WILLIAMS, BENNIE EDWARDS, HORACE FAULKNER, MARY M.
WEAVER, LeROY NORRIS, JAMES HOLMES, MILDRED McGHEE,
BASIL GREEN, JOE JARRELL, FORREST McGHEE, CHESLEY YAR-
BOROUGH, ZOLA MAE AYSCUE, GOLDA GREY AYSCUE, DAYLON
AYSCUE, BLANCHE WHITE, JAMES R. ADCOX, JR., ANNIE TUR-
NER, RAYMOND B. HUDSON, ENGENE HUDSON, LILLIE JONES,
MATTIE A. PARRISH, RUBY C. ROSE, JOE FOWLER, ROBERT
PARRISH, MAUDE JARRELL, FLORENCE ROBERSON, JOE ROB-
ERSON, LIJAH PEOPLES, JAMES FREEMAN, OSCAR HEDGEPETH,
JR., JIM STEVENSON, HOMER ROBERTS, JR., CHARLIE RAINES,
JOE PACE, MARVIN GRIFFIN, VOLLIE MANNING, ROY FRANCIS,
ROBERT GRISSOM, ALBERTA R. McGHEE, BOBBY JONES, CHAR-
LIE WEST, FRED LEE COGHILL, ROBERT RAINES, CLAUDIA
GUPTON, ELIZABETH MARKS, JAMES TART, ANDREW RAINES,
BUD DUKE, MORTON ROBERSON, THURSTON LIGGON, EDWARD
F. TUCKER, WILLIAM K. HARRIS, HOMER ROBERTS, SR., AND ALL
OTHER PERSONS TO WHOM NOTICE AND KNOWLEDGE OF THIS ACTION MAY COME.

(Filed 25 November, 1959.)

1. **Appeal and Error § 22—**

An exception to the findings of fact and conclusions of law and the
judgment of the court is a broadside exception which does not present
for review the admissibility of the evidence on which the findings were
made or the sufficiency of the evidence to support the findings.

2. **Appeal and Error § 2—**

The Supreme Court may review the merits of a cause and decide the

questions sought to be presented by the appeal when the matter is of wide public interest and concern, notwithstanding that the exceptions are insufficient to present the questions.

**3. Constitutional Law §§ 23, 24: Contempt of Court § 6—**

A person denying his asserted violation of a restraining order in contempt proceedings has the right under the provisions of Art. I, Section 17 of the Constitution of North Carolina, synonymous with due process of law under the Federal Constitution, to confront and cross-examine witnesses by whose testimony the asserted violation is to be established.

**4. Constitutional Law §§ 4, 37—**

In criminal as well as in civil actions a person may, subject to certain exceptions, waive a constitutional right by express consent, by failure to assert such right in apt time, or by conduct inconsistent with the purpose to insist upon such right.

**5. Same: Constitutional Law § 31—**

The right of confrontation may be waived by defendant himself in prosecutions for felonies other than capital, and in prosecutions for misdemeanors he may waive such right through counsel with the consent of the court.

**6. Contempt of Court § 3—**

Knowledge of a person of the substance and meaning of a restraining order is sufficient knowledge of the order as the basis for a prosecution for contempt, and it is not required that such person have knowledge of the exact words used in the order.

**7. Same—**

Service of a restraining order on a defendant is sufficient to fix him with knowledge of its provisions as the basis for a prosecution for contempt.

**8. Contempt of Court § 6—**

The testimony of respondents, together with the other evidence heard by the court, *held* sufficient to sustain the court's findings that each respondent had knowledge of the substance and meaning of a restraining order theretofore issued in the cause and, with such knowledge, willfully and intentionally violated its terms.

**9. Constitutional Law §§ 31, 37: Contempt of Court § 6: Criminal Law § 155—**

In proceedings under an order to show cause why respondents should not be held in contempt of court for the willful violation of a restraining order, the admission of affidavits tending to establish specific acts done by each respondent in violation of the order will not be *held* for error when respondents do not challenge the admission of the affidavits or indicate any desire to cross-examine any affiant, and when no objection is made until after judgment, since defendants will be held to have waived their rights of confrontation.

**10. Contempt of Court § 6—**

Respondents, who with knowledge of a restraining order, willfully participate in a violation of its provisions are subject to punishment for their contumacious acts, but where the evidence is insufficient to support a finding that one of the respondent's had knowledge of the restraining order the judgment for contempt must be reversed as to him.

HIGGINS, J., not sitting.

APPEAL by Johnny Martin, Charlie T. Duke, Douglas Rose, Johnny Rose, Curtis Rose, Charlie C. Harris, Dorsey Eatman, Willie S. Jarrell, Clinton (Clint) Roberson, Leonard Barham, Willie H. Anstead, Gilbert Lee Clayton, George Newcomb Edwards, William M. Jarrell, Tommy Currin, James M. (J. M.) Morefield, Willie Furman Tart, Wayne Vick, Edward Moseley, Jimmy J. Mulchi, and George Anstead, from orders entered by *Bickett, J.,* in Chambers in VANCE on 17 April 1959, adjudging each in contempt of court, docketed and argued here as No. 385.

On 13 February 1959 Harriet Cotton Mills, a domestic corporation operating a cotton mill in Henderson, instituted an action in the Superior Court of Vance County against two labor unions and 122 named individuals. Contemporaneously with the issuance of summons, plaintiff filed a verified complaint in which it alleged that beginning 15 November 1958 defendants had engaged in mass picketing of its plant, thereby preventing free access thereto by those lawfully entitled to enter; that on 9 February 1959 and since that date defendants had not limited their activities to mass picketing but by threats, assaults, and other acts of violence had prevented employees desiring to do so from working at its plant and by similar conduct had prevented merchants and transportation agencies from delivering cotton and other supplies to its mill. The complaint alleged specific acts of violence by the named defendants. Section 12 of the complaint charged: "That defendants have combined together, and with others whose names are unknown to plaintiff and are combining together to prevent by unlawful means, including, among others, the acts of force and violence and threats of force and violence as hereinabove alleged, the operation by plaintiff of its plant, and to prevent or impede other persons lawfully seeking to work therein, or to enter and leave said premises." Asserting inadequate legal remedies, plaintiff prayed for injunctive relief.

On the afternoon of the 13th, Judge Bickett, presiding over the courts of the Ninth Judicial District, issued an order which in part provided: ". . . that the named defendants, and each of them, and

all persons acting in concert with them, or under their direction or the direction of any of them, and all other persons to whom notice and knowledge of this order may come, are, until the merits of this cause are determined, and until this Court orders otherwise, hereby enjoined and restrained as follows:

"1. From interfering in any manner with free ingress and egress to and from the plaintiff's premises.

"2. From assaulting, threatening, abusing, damaging the property of or in any manner intimidating persons to work or seek to work in or lawfully seek to enter plaintiff's plant, whether on the plaintiff's premises or streets, or thoroughfares adjacent thereto, or away from said premises.

"3. From assembling together in a motor vehicle or vehicles, and pursuing or following employees or agents of plaintiff riding to and from their work or other lawful business at plaintiff's plant, whether on private roadways on plaintiff's property or on public highways leading to and from said plant.

"4. From having more than eight persons at any one time as peaceful pickets at any gate to the plaintiff's plant, provided that no person, including pickets, may approach closer to any gate or entrance to the plaintiff's plant than 75 feet, and provided further that no person or persons shall block driveways or walkways leading to the gates or other entrances to said plant by picketing, barricades, automobiles or otherwise; provided further there shall be no pickets except at the entrance gates to plaintiff's premises or plant.

"It is the intent and purpose of this paragraph 4 that no person, whether engaged in picketing or not, other than persons lawfully seeking to approach and enter the plaintiff's premises for the purpose of transacting lawful business or lawfully traveling along thoroughfares adjacent thereto, shall approach closer to any gate of plaintiff's plant than 75 feet, and no automobiles shall be parked within 75 feet of plaintiff's gates.

"5. No person shall abuse, intimidate, strike, threaten, or use any vile, abusive, violent, or threatening language at or towards any person on the plaintiff's premises or any person entering or leaving said premises, or any employees of plaintiff anywhere, and shall in no manner interfere with or impede any motor vehicles, wagon, cart, truck, or animal, in approaching or leaving the plaintiff's premises, and shall in no manner interfere with the free ingress and egress of any person or vehicle or animal to or from the plaintiff's plant, or along and over any of the streets, road, or walkways adjacent or leading to the plaintiff's plant.

"The acts which persons are hereby enjoined and restrained from doing, they and each of them likewise are hereby enjoined and restrained from aiding or procuring or causing to be done."

The sheriff was directed to serve "and post copies of this order in conspicuous places at and in the vicinity of plaintiff's plant, and particularly at all the entrance gates to said plant and office."

The caption of the order, after listing the 122 named defendants, is directed to "all other persons to whom notice and knowledge of this action may come."

The order directed defendants to appear at the courthouse in Vance County on 5 March and show cause why it should not remain in force until a final determination of the issues. This order was, on 16 February, served on 114 of the 122 named defendants including Johnny Martin, Charlie T. Duke, Douglas Rose, Johnny Rose, Curtis Rose, Charlie C. Harris, Dorsey Eatman, Willie S. Jarrell, and Clinton Roberson, hereinafter designated as defendant appellants.

The named defendants answered the complaint. They admitted a strike by plaintiff's employees but denied the existence of and participation in any breaches of the peace or other wrongful conduct.

On 5 March Judge Bickett, on motion of plaintiff, continued the restraining order to the final hearing. He recited in his order that the attorney for defendants did not resist plaintiff's motion.

On 25 March plaintiff, as the basis for a show cause and contempt order, filed a petition with Judge Bickett reciting that 26 named individuals, including defendant appellants and George Anstead, Willie H. Anstead, Leonard Barham, Gilbert Lee Clayton, Tommy Currin, George Newcomb Edwards, James M. Morefield, Edward Moseley, Jimmie J. Mulchi, Willie Furman Tart, and Wayne Vick, not parties, and hence hereinafter designated as respondent appellants, had willfully disobeyed the provisions of the restraining order by described acts of violence. Plaintiff filed with its petition and motion numerous affidavits particularizing acts of each appellant constituting a violation of the restraining order.

On 26 March Judge Bickett issued an order reciting the filing of the petition which asserted a willful violation of the restraining order by appellants "after having actual notice and knowledge of said Restraining Order." He required appellants to appear before him at Henderson on 1 April and show cause why they should not be held for contempt. This order, with copies of plaintiff's petition and motion and the affidavits accompanying the same, was served on appellants.

Defendant appellants and respondent appellants filed a joint answer

which was duly verified. To relieve them of the charge of contempt, they say:

"That respondents, and each of them . . . respectively represent to this Honorable Court, that they had no intent to commit any act of violence, to participate in or incite a riot or mob action, as described and set forth in said petition and affidavits.

"That said respondents, and each of them, respectfully represent that if they are guilty of anything at all, which is denied, it was being present at the time and place described in said petition and affidavits when such alleged action or overt acts alleged to have happened and by their presence in or near the scene of such occurrence made them an involuntary and non-participant in the matters and things described in the petition and affidavits.

"That respondents, and each of them, respectfully represent to this Honorable Court, that they had no intent at any time to commit a voluntary and willful act in violation of said restraining order.

"Wherefore, having fully answered Notice to Show Cause, respondents pray that Notice to Show Cause be dismissed and that they not be held in contempt of this Honorable Court."

On 1 April, the return date of the show cause order, the hearing was, at the request of counsel for appellants, continued to 2 April. It was not completed on that date and was again, at the request of counsel, continued. Hearings were had on 10, 11, and 17 April. On the 17th the court entered orders holding 21, of the 26 cited, for contempt. The record does not disclose what disposition was made with respect to the charges against the remaining five.

Each order contains specific findings of fact with respect to the acts done by the person therein named and a finding that the act or acts were done with a willful intent to violate the restraining order and, as to defendant appellants, knowledge of its provisions by reason of service.

Knowledge of the restraining order by respondent appellants was based on (a) admission by appellants on the witness stand that they knew about the restraining order, and (b) findings that the order had been posted at the mill gates, published in the local paper, and its contents publicized over the radio.

Based on the findings, the court imposed punishment by way of fines varying from $100 to $250, and in addition, imposed prison sentences on five for 20 days and on three for 30 days.

When the orders adjudging appellants in contempt were entered, they noted the following exception:

"To the foregoing Order the respondents and each of them except

to the findings of fact and conclusions of law of the Court, and respondents and each of them except to the judgment rendered against each of them . . ." Notice of appeal was given and 60 days was allowed appellants to serve statement of case on appeal.

*Perry & Kittrell, Chas. P. Green, and A. W. Gholson, Jr., for plaintiff, appellee.*

*W. M. Nicholson, James B. Ledford, James J. Randleman, and L. Glen Ledford for appellants.*

RODMAN, J. The exception quoted in the statement of facts is the only one appearing in the record. Nonetheless, appellants, in the assignments of error, attempt to break this single exception into four parts and refer to four exceptions.

The single exception is broadside. It does not draw into focus any particular finding of fact. It deprives this Court of that assistance it is rightfully entitled to expect if an appellant seriously intends to challenge the sufficiency of the evidence to support the findings of fact. It does not challenge the admissibility of the evidence on which the findings are made nor the probative value of the evidence to establish the facts found. See Rules 19(3) and 21 of this Court, 221 N.C. 546, Vol. 4A, p. 171 *et seq.* of the General Statutes; *Columbus County v. Thompson,* 249 N.C. 607, 107 S.E. 2d 302; *Caldwell v. Bradford,* 248 N.C. 48, 102 S.E. 2d 399; *In re McWhirter,* 248 N.C. 324, 103 S.E. 2d 293; *In re Estate of Cogdill,* 246 N.C. 602, 99 S.E. 2d 785; *Weddle v. Weddle,* 246 N.C. 336, 98 S.E. 2d 302; *Kovacs v. Brewer,* 245 N.C. 630, 97 S.E. 2d 96; *Putnam v. Publications,* 245 N.C. 432, 96 S.E. 2d 445; *Travis v. Johnston,* 244 N.C. 713, 95 S.E. 2d 94; *Merrell v. Jenkins,* 242 N.C. 636, 89 S.E. 2d 242; *Grandy v. Walker,* 234 N.C. 734, 68 S.E. 2d 807; *Burnsville v. Boone,* 231 N.C. 577, 58 S.E. 2d 351.

The questions presented in this and related appeals heard at this term grow out of a strike of employees at cotton mills in Henderson. The strike began in 1958. Early in 1959 the situation at Henderson was tense. There was much violence. Local law enforcement officers were unable to cope with the situation and maintain order. A large segment of the Highway Patrol was assigned to the Henderson area so that they might assist the local officers. Finally it became necessary to send the National Guard to Henderson. No one wished a declaration of martial law. To the contrary, every one wanted civil authorities to continue in control and civil liberties to continue in force. To accomplish this purpose and to make effective use of the

Guard, the Legislature gave the Guard, when called to duty by the Governor, "such power of arrest as may be reasonably necessary to accomplish the purpose for which they have been called out." c. 453, S.L. 1959. The Legislature made a special appropriation of $750,000 for the purpose of defraying expenses of the National Guard in emergencies. c. 1053, S.L. 1959.

Because of the wide interest and importance in this and related cases and the nature and character of questions attempted to be presented, we feel justified in relaxing the rule so as to consider the factual situation described by the evidence as well as the legal questions enumerated in the assignments of error.

The orders holding appellants in contempt are based on events occurring on 2 and 16 March. Some of appellants participated in the acts occurring on 2 March, others in the acts occurring on 16 March.

The order holding Douglas Rose in contempt is based on findings that he took part in prohibited acts on each of these days. Because descriptive of conditions and typical of the facts found by the court which form the basis for the orders punishing for contempt, we quote from the findings in the Douglas Rose order: ". . . the said Douglas Rose willfully, knowingly, and intentionally on March 2, 1959, shortly after 3 o'clock p.m. violated the Restraining Order by being a member of a group or mob of approximately fifteen or twenty people, which group or mob followed Marcus Davis, an employee of the Harriet Cotton Mill, from the plaintiff mill's gate to his home, and which group or mob stood in the street in front of Marcus Davis' house and threw bricks and bottles at the said Marcus Davis' car, one of which objects hit his car and damaged the same.

"That the Court further finds as a fact that the said Douglas Rose willfully, knowingly and intentionally on March 16, 1959, at or about 3 o'clock p.m. violated the terms of the Restraining Order by throwing rocks or other objects at cars of persons who work in or seek to work in plaintiff's plant, and was a member of a group or mob of approximately fifty or sixty men, the members of which mob were armed with sticks, rocks, bottles, bricks and clubs, and which said mob was threatening employees of plaintiff, and were stoning the cars of employees of plaintiff as they were leaving work, and blocking Alexander Avenue so that the cars of employees and persons working in the Harriet Cotton Mills could not pass along said street but had to come to a complete stop for several minutes. It is further found as a fact that Douglas Rose, while a part of this mob, participated directly in blocking Alexander Avenue, and was also acting in concert with others in this group or mob in furtherance of the com-

mon purpose of willfully, knowingly and intentionally intimidating and threatening persons working in the Harriet Cotton Mills, interfering with the free egress from plaintiff's premises, assaulting, damaging and abusing the property of persons who work in the Harriet Cotton Mills, and interfering with and impeding motor vehicles leaving plaintiff's premises, and that the said Douglas Rose was a party to what the other members of the mob did in violation of the Restraining Order.

"The Court further finds that the above acts committed by the said Douglas Rose were committed for the purpose of willfully, knowingly and intentionally intimidating employees and persons who work in or seek to work in plaintiff's plant, and interfering with and impeding motor vehicles leaving plaintiff's premises, and interfering with free ingress and egress to and from plaintiff's plant. That respondent, Douglas Rose, on the 16th day of March, 1959, did willfully, knowingly and intentionally violate the terms of the Restraining Order theretofore issued in this cause."

The facts found assuredly suffice to hold appellant in contempt, and since the only question presented by the single exception is the validity of the judgment based on the facts found, it follows that the exception is without merit.

But appellants say that conceding the facts found establish a prohibited act, there is no competent evidence to support the findings, and the findings are therefore a nullity.

To support the charge of contempt the State offered in evidence affidavits of Marcus E. Davis, victim of the mob action of 2 March, and Roy Thomas Edwards and Linwood Sledge, victims of the mob action of 16 March. These affidavits stated in detail acts of violence consisting of throwing rocks, bricks, and other missiles, resulting in damage to the motor vehicles they were operating on the streets of Henderson. The affidavit of Marcus Davis gave the names of five persons who were part of that mob. Edwards and Sledge did not name any members of the mob who attacked them. In addition to these affidavits, 22 affidavits made by members of the State Highway Patrol were introduced in evidence. These affidavits describe the conditions observed by them on 2 and 16 March and the parts which the different persons played in the happenings on those days. The conditions described and appellants' participation therein are sufficient to support the findings. An affidavit of the sheriff of Vance County was put in evidence which stated that copies of the restraining orders had been posted at or near the mills and at the courthouse, published in the local newspaper, and publicized over the radio. Copies of all these

affidavits accompanied the show cause order which was served on appellants. No objection was taken when these affidavits were offered in evidence. The record is barren of any suggestion that it was ever intimated to Judge Bickett that the affidavits were not admissible or that it was in any manner inappropriate to use them for the purpose for which they were offered. So far as the record discloses, the first time the right to use the affidavits was questioned was on 3 July when the case on appeal, which included the assignments of error, was served on appellee.

Appellants now urge us to reverse the order holding them in contempt because, as they assert, the affidavits offered to support the findings of fact were incompetent and should have been rejected by the court *sua sponte* since proof in that manner constituted a denial of due process guaranteed by both State and Federal Constitutions:

They assert the conduct charged amounts to criminal contempt, *Galyon v. Stutts*, 241 N.C. 120, 84 S.E. 2d 822; *Bissette v. W. B. Conkey Co.*, 194 U.S. 324, 48 L Ed. 997; hence proof of the charges by the affidavits deprived them of the right of confrontation and cross-examination, rights guaranteed by the Constitution.

As stated by appellants, it has been the practice of courts and litigants in this State to use affidavits in contempt proceedings to establish or negative the commission of the asserted contumacious act. In *In re Deaton*, 105 N.C. 59, respondent had been held in contempt by the mayor of Troy. He appealed to the Superior Court. That court declined to review the findings on which the order holding him in contempt was based. On appeal to this Court, *Clark, J.*, said: "In this class of contempts on appeal from the Superior Court, the findings of the Judge as to the facts are conclusive, and this Court can only review the law applicable to such state of facts. It is otherwise, however, on appeals from a subordinate Court to the Superior Court. In that case, it is the duty of the Judge to review the findings of fact of the Court below, as well as the rulings of law; and when, in furtherance of justice, it may be required, the Judge can hear additional testimony, either orally or by affidavit, in making up his own findings of fact." At least since the decision in that case it appears to have been the practice to use affidavits and parol testimony indiscriminately. *In re Parker*, 177 N.C. 463, 99 S.E. 342; *Erwin Mills v. Textile Workers Union*, 234 N.C. 321, 67 S.E. 2d 372; and *Cotton Mill Co. v. Textile Workers Union*, 234 N.C. 545, 67 S.E. 2d 755, illustrate the practice. Just as in the trial of this case the right to use affidavits has heretofore gone unchallenged. Their use has been looked upon as a means of facilitating disposition of the causes.

Not until this and related cases growing out of the Henderson situation has the right to use affidavits been challenged in this Court. The right to use affidavits for the purpose of establishing contumacious conduct has been considered in a few cases outside of North Carolina. The use of such affidavits has been sanctioned in Georgia, *Warner v. Martin*, 52 S.E. 446, 4 Ann. Cas. 180; Tennessee, *Bowdon v. Bowdon*, 278 S.W. 2d 670; California, *Ex parte Wenzler*, 74 P. 2d 297; Illinois, *O'Neil v. People*, 113 Ill. App. 195; North Dakota, *S. v. Harris*, 105 N.W. 621. They have been held inadmissible in New Jersey, *Staley v. South Jersey Realty Co.*, 90 A 1042, L.R.A. 1917B 113; Connecticut, *Welch v. Barber*, 52 Am. Rep. 567; Texas, *Ex parte Kilgore*, 3 Tex. App. 247; Minnesota, *S. ex rel. Russell v. District Court*, 62 N.W. 831; by the Circuit Court for the 8th Circuit, *New Jersey Patent Co. v. Martin*, 166 F. 1010. The different conclusions reached are noted in 17 C.J.S. 112 and 12 Am. Jur. 441.

In our opinion, the "law of the land" guaranteed by Art. I, §17 of our Constitution, synonymous with due process of law, guarantees to one charged with contempt of court by an asserted willful violation of a restraining order a right, when he denies the asserted violation, to confront and cross-examine witnesses by whose testimony the asserted violation is to be established. Such right of confrontation and cross-examination has been repeatedly declared in analagous situations. *In re Gibbons*, 245 N.C. 24, 95 S.E. 2d 85; *In re Gamble*, 244 N.C. 149, 93 S.E. 2d 66; *Roediger v. Sapos*, 217 N.C. 95, 6 S.E. 2d 801; *Bank v. Motor Co.*, 216 N.C. 432, 5 S.E. 2d 318; *S. v. Hightower*, 187 N.C. 300, 121 S.E. 616; *Cason v. Glass Bottle Blowers Asso.*, 231 P. 2d 6, 21 A.L.R. 2d 1387. Our decisions accord with "due process of law" guaranteed by the Federal Constitution as that phrase has been interpreted by the Supreme Court of the United States. *Re Oliver*, 333 U.S. 257, 92 L. Ed. 682.

But recognition of the right to confront and cross-examine does not establish prejudice to appellants by the method here pursued. Appellants had the privilege of waiving these constitutional rights. "It is the general rule, subject to certain exceptions, that a defendant may waive the benefit of a constitutional as well as a statutory provision," Sedgewick, Stat. and Const. Law, p. 111. And this may be done by express consent, by failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it. *S. v. Mitchell, supra* (119 N.C. 784).

"In this jurisdiction, the more important privilege of being present in person, so as to confront one's accusers on trial for a criminal offense, may, in felonies other than capital, be waived by defendant

himself, but not by his counsel, while in misdemeanors such waiver may be made through counsel with the consent of the court." *S. v. Hartsfield,* 188 N.C. 357, 124 S.E. 629; *S. v. Grundler, ante,* 177; *Cameron v. McDonald,* 216 N.C. 712, 6 S.E. 2d 497; *S. v. Harris,* 181 N.C. 600, 107 S.E. 466; *S. v. Mitchell, supra; Miller v. State,* 237 N. C. 29 cert. den 345 U.S. 930, 97 L. Ed. 1360.

"No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right." *Yakus v. U.S.,* 321 U.S. 414, 88 L. Ed. 834; *Michel v. Louisiana,* 350 U.S. 91, 100 L. Ed. 83; *Jennings v. Illinois,* 342 U.S. 104, 96 L. Ed. 119.

Appellants have been represented throughout by experienced counsel. The briefs here filed and the argument made in behalf of their clients demonstrate their ability. No one would suggest that these attorneys were not aware of the proper way to protect the rights of their clients.

Each appellant, with the exception of Jimmie J. Mulchi, was a witness in his own behalf. Mulchi, so far as the record discloses, did not testify. Each respondent appellant testifying stated that he had knowledge of the restraining order. Their testimony, read in connection with their answer, is sufficient to justify the court's finding that the acts were done willfully, knowingly, and intentionally violated the terms of the restraining order. It was not necessary to establish that they had knowledge of the exact words used in the order. Knowledge of its substance and meaning was sufficient. *Weston v. Lumber Co.,* 158 N.C. 270, 73 S.E. 799. Service of the restraining order on defendant appellants fixed them with knowledge of its provisions.

If appellants wished to challenge the evidence offered for the purpose of establishing their guilt, they should have objected when the evidence was offered. The affidavits came principally from law enforcement officers. Whether they or any of them were in court when the hearing was had does not appear; but we think it certain if appellants had indicated any desire to cross-examine any affiant, permission would have been granted and the affiant brought to court for that purpose. In the absence of an exception the evidence offered was properly received and considered.

"Conceding that, as a piece of independent testimony a mere affidavit was not admissible, it was competent for defendant to waive this objection." *Connecticut Mut. L. Ins. Co. v. Hillmon,* 188 U.S. 208, 47 L. Ed. 446.

*Johnson, J.,* in *Lambros v. Zrakas,* 234 N.C. 287, 66 S.E. 2d 895, quotes Wigmore as follows: "The initiative in excluding improper

evidence is left entirely to the opponent,—so far at least as concerns his right to appeal on that ground to another tribunal. The judge may of his own motion deal with offered evidence; but for all subsequent purposes it must appear that the opponent invoked some rule of Evidence. A rule of Evidence not invoked is waived." *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326; *Grandy v. Walker, supra; Brewer v. Ring and Valk,* 177 N.C. 476, 99 S.E. 358; *Tyner v. Barnes,* 142 N.C. 110; *Holder v. Mfg. Co.,* 135 N.C. 392; *Gudger v. Penland,* 118 N.C. 832; *Gibbs v. Lyon,* 95 N.C. 146; *Williamson v Canal Co.,* 78 N.C. 156; *Goodwin v. Fox,* 129 U.S. 601, 32 L. Ed. 805; *Neal v. Delaware,* 103 U.S. 370, 26 L. Ed. 567, *Evans v. Hettich,* 7 *Wheaton* 453, 5 L. Ed. 496.

Respondent appellants correctly concede that if they had knowledge of the restraining order and willfully participated in a violation of its provisions they are subject to punishment for their contumacious acts. *Erwin Mills v. Textile Workers' Union, supra; Cotton Mills v. Abrams,* 231 N.C. 431, 57 S.E. 2d 803; *Ex parte Lennon,* 166 U.S. 548, 41 L. Ed. 1110; *S. ex rel. Lindsley v. Grady,* 195 P. 1049, 15 A.L.R. 383.

Jimmie J. Mulchi is not a party defendant. There is, in our opinion, no evidence in the record sufficient to support the finding that he had knowledge of the restraining order, its purpose, terms and provisions.

The order holding Jimmie J. Mulchi in contempt is
Reversed.
As to the other appellants the orders are
Affirmed.

HIGGINS, J., not sitting.